1999-NMCA-135

991 P.2d 7

**Raymond L. THOMAS, Petitioner–Appellee,**

v.

**Anne THOMAS, Respondent–Appellant.**

**No. 19,712.**

Court of Appeals of New Mexico.

Aug. 16, 1999.

Mary Ann R. Baker–Randall, Mary Ann R. Baker, P.C., Albuquerque, for Appellee.

Anne E. Bennett Thomas, Albuquerque, Pro Se Appellant.

## OPINION

PICKARD, Chief Judge.

{1} Wife appeals various orders of the trial court in connection with her divorce and custody proceedings. We reverse the trial court's order to seal the record, remand the order to prohibit further hearings, and affirm the trial court in all other regards.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} This lengthy and contentious case originated in 1992 when Husband filed for divorce. Husband and Wife parented two children, Leah, born in 1987, and Keith, born in 1988. From the beginning, this was an acrimonious and litigious case, involving multiple orders to show cause and modifications of the temporary custody arrangements, as well as allegations of criminal conduct against Wife, none of which are directly at issue here.

{3} Husband, an attorney, proceeded pro se for the majority of the trial court proceeding, and Wife hired five separate attorneys, each of whom withdrew from the case. Wife represented herself for the final stages of the trial court proceeding. The court appointed a guardian ad litem (GaL) to represent the children's interests and a Rule 11–706 expert to perform psychological evaluations on the parties and the children. *See* Rule 11–706 NMRA 1999. The GaL filed several motions in order to secure payment for her services. Initially, Husband failed to pay, but over the course of the proceedings, it was Wife who was delinquent in paying for the GaL. The court also appointed a special master to hear motions and make recommendations.

{4} In 1995, the court granted Husband and Wife joint legal custody of the children, with primary physical custody to Wife and extensive visitation rights to Husband. Four days later, the court appointed a wiseperson/arbitrator to assist in solving day-to-day issues that would arise as a result of the shared custody, given the parties' inability or unwillingness to cooperate.

{5} In 1996, Husband moved for modification of the custody arrangement, asking that he be granted sole physical custody of the children. The trial court granted this motion, finding that the joint custody arrangement was not in the best interests of the children. Wife was given visitation rights, and Husband was ordered to keep Wife informed of issues regarding the children's education, medical needs, church activities, and recreational activities.

{6} In 1997, Husband moved the trial court to seal the record of the divorce proceedings, arguing that Wife repeatedly made libelous and slanderous allegations against him. He maintained that the failure to seal the record might tarnish his reputation in the legal community and thereby jeopardize his ability to provide for the children. The trial court granted Husband's motion by memorandum order.

{7} Despite several orders instructing her to do so, Wife failed to keep up with her portion of the payments for the GaL. Ultimately, the GaL filed a motion to prohibit further hearings in the case until she received Wife's payments. At the motion hearing, Wife cited to cases that she indicated stood for the proposition that a party cannot be denied access to the courts due to indigency. She had filed an affidavit of indigency the day before the motion hearing. The trial court granted the GaL's motion, noting that Wife's situation was unlike those in the cases she cited. ·

{8} We include the remaining facts pertinent to each appellate issue in our discussion.

## II. DISCUSSION

{9} We note at the outset that Husband's answer brief did not comply with the requirements of Rule 12–213(B) NMRA 1999. In the future, if Husband's counsel has occasion to file an answer brief in this Court, we advise her to answer the arguments of the brief in chief and to support her position by citing legal authority and the record. We are particularly unimpressed by her claim that she failed to listen to the tapes because their expense was prohibitive, as the tapes are available on loan from the Court at no cost to the parties. We also caution against reliance on calendar notices. "[W]hen a case is decided on a non-summary calendar, it should be decided on the basis of the issues, argument, and authority contained in one manageable set of briefs," not on the basis of references to prior documents in our files. *State v. Aragon,* 109 N.M. 632, 634, 788 P.2d 932, 934 (Ct.App.1990). In addition, a calendar notice is simply a "preliminary and tentative indication" that may be issued "for tactical reasons" and "may not indicate the ultimate disposition of the case." *State v. Gonzales,* 110 N.M. 218, 227, 794

P.2d 361, 370 (Ct.App.1990), *aff'd,* 111 N.M. 363, 805 P.2d 630 (1991).

### A. Order Modifying Child Custody

{10} Wife contends that the trial court erred in granting Husband's motion for change of custody. A court may modify a custody order only upon a showing of a substantial change in circumstances since the prior order that affects the best interests of the children. *See Campbell v. Alpers,* 110 N.M. 21, 26, 791 P.2d 472, 477 (Ct.App.1990). The trial court retains "broad discretion and great flexibility in fashioning a custody arrangement that will serve the best interests of the children." *Newhouse v. Chavez,* 108 N.M. 319, 324, 772 P.2d 353, 358 (Ct.App. 1988). We will overturn the trial court's custody decision only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence. *See Clayton v. Trotter,* 110 N.M. 369, 371, 796 P.2d 262, 264 (Ct.App.1990).

{11} We address Wife's arguments in turn. She first maintains that no substantial and material change in circumstances had taken place to warrant a change in custody. *See* NMSA 1978, § 40–4–9.1(A) (1986). The trial court found that "constant haggling ... [was] causing emotional damage to the children." Wife argues that there was no testimony to support this finding. We disagree. At the hearing on this motion, the GaL gave testimony regarding her interactions with the parties and the children. She stated that the elder child had demonstrated her unhappiness with the parties' constant bickering, noting the children felt "forlorn that they could not stop the custody battle." The GaL's testimony showed that the perpetual fighting over custody was negatively impacting the children. Whether or not there was proof of "emotional damage" per se, the observation that the parties' continuing inability to cooperate was affecting the children was a sufficient change in circumstance to support the modification of custody. *Cf. Strosnider v. Strosnider,* 101 N.M. 639, 647, 686 P.2d 981, 989 (Ct.App.1984) (holding joint custody may be unworkable in some cases due to parties' inability to agree with or accommodate each other).

{12} Wife next argues that, even given a change in circumstances, the trial court failed to follow the appropriate statutory procedures for changing the custody arrangement. She contends that NMSA 1978, § 40–4–8(B)(1) (1993), and Section 40–4–9.1(G) require that the change of custody issue go to mediation, unless there is evidence of domestic violence. However, the statute reads that the court "shall refer that issue to mediation if feasible unless a party asserts or it appears to the court that domestic violence or child abuse has occurred." Section 40–4–8(B)(1). Therefore, the statute's language permits the court to bypass mediation if it does not appear to be feasible, even in non-domestic violence or abuse situations. The court's experience in this case could easily have led it to the conclusion that mediation between these parties was not feasible, or a worthwhile use of resources. The court did not err in this regard.

{13} Mother next asserts that the trial court erred procedurally by not allowing the appointed wiseperson/arbitrator to resolve the custody issue. The order appointing this individual states that the wiseperson/arbitrator's role would be "to facilitate and to arbitrate, if necessary, disputes which normally would be negotiated by the parties under a shared custodial arrangement, but the Court does not feel comfortable that disputes can be negotiated by these parties consistent with the best interest of the minor children." There is nothing in the description of the wiseperson/arbitrator's role to indicate that she must address disputes that fall outside of the ordinary disputes resulting from shared custody prior to the court being able to address them. A motion to significantly change the custody arrangement is not an issue of the sort assigned to this wiseperson/arbitrator under the order.

{14} Wife notes that a Rule 11–706 expert was to evaluate the parties prior to determining custody and acknowledges that those evaluations did, in fact, take place. Wife appears to take issue with the fact that the trial court did not explicitly refer to the evaluations in the hearing or order for modification of custody and did not order another

evaluation prior to the modification. The Rule 11–706 expert reported her findings to the court at a February 1995 hearing, whereas Husband filed his motion in October 1996, and the trial court decided the motion in April 1997. However, Wife points to no requirement that evaluations occur prior to every custody change, and we can find none in the record.

{15} It is also worth noting that the Rule 11–706 expert, while not recommending sole custody for Husband, did recommend that the children primarily reside with Husband. Nor was the change of custody a drastic measure. Rather, in August 1995, the trial court altered the joint custody situation to modified joint custody, in which Husband would make all non-emergency medical decisions for the children. At that time, the trial court indicated that the next step, if the situation continued to deteriorate, would be a sole custody arrangement.

{16} Wife next claims that the court failed to consider the best interests of the children in making its decision. We disagree. Although the trial court did not make point-by-point findings to correspond to the statutory factors for making this determination, see § 40–4–9.1(B), the order sufficiently tracks the factors, indicating that the court considered them in making its decision. The trial court's order indicates that the court was concerned about the emotional well-being of the children and that the children had close relationships with both parents, each of whom was able to take care of the children. The remaining statutory factors, however, clearly counseled against joint custody, as stated in the order. The parties' animosity toward each other, lack of respect for each other's parental rights, distance between their residences, and unwillingness to cooperate led the trial court to reasonably find that joint custody was not in the children's best interest, a belief that was held also by the GaL, whose role was to represent the children's best interests. The trial court did, therefore, consider the children's best interests in modifying custody.

{17} Wife argues that even if the legal determination was made that joint custody was not in the children's best interests,

there was no investigation of which parent should have sole custody. The trial court's order indicates that the decisive factor was Wife's unwillingness to cooperate with the GaL, although there was other evidence in the record that supported the change to Husband. While, as Wife contends, Wife's lack of cooperation does not directly speak to her parenting abilities, it does indicate that Wife has been unwilling to work toward resolution in the children's best interests through the channels provided by the court. Her contention that she did not cooperate with the GaL because she believed that the GaL had been released by the wiseperson/arbitrator is contradicted by the GaL's testimony. According to the GaL, Wife was uncooperative, or at least unreceptive, at all stages of the proceedings, and not solely after the wiseperson/arbitrator's decision, as would be necessary for the factual basis of Wife's issue. As a result, the trial court did not err by failing to credit Wife's claim.

{18} Wife was not deprived of her First Amendment rights by virtue of the custody modification. Not only does the First Amendment not guarantee the right to raise children as one parent sees fit, but Wife is not being deprived of influence on and contact with her children. The trial court's order requires that Husband not interfere with Wife's relationship with the children. In addition, Wife was granted significant visitation with the children on weekends and in the summers. She will, therefore, still be able to raise and teach her children.

{19} Wife alleges that she was denied the due process of law at the change of custody hearing. She claims that the judge intimidated her and prevented her from making arguments, cross-examining the GaL, and presenting her own witnesses. While it does appear that the court was perhaps unnecessarily short with Wife, the proceedings did not violate due process. Due process requires notice and a meaningful opportunity to be heard. *See In re Termination of Parental Rights of Laurie R.,* 107 N.M. 529, 534, 760 P.2d 1295, 1300 (Ct.App.1988).

{20} In the course of the hearing, the trial court at two points prevented Wife from making objections. Wife states that the first was to have been an objection to having the modification heard by the court instead of the wiseperson/arbitrator. Given the limited scope of the wiseperson/arbitrator's authority that we discussed above, the modification issue was properly before the court, and any error in preventing the objection was harmless. *See* Rule 11–103(A) NMRA 1999 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...."); *City of Albuquerque v. PCA—Albuquerque No. 19*, 115 N.M. 739, 743–44, 858 P.2d 406, 410–11 (Ct.App.1993) (discussing harmless error).

{21} Wife does not mention the grounds for her second objection that was overruled, other than that it involved a procedural matter. To this second objection, the judge told Wife that she would "have a chance in a moment." We are unwilling to assume on this record that the overruling of this objection constituted a due process deprivation. Nor do we perceive a due process violation in the judge's use of the GaL despite the purported release of the GaL by the wiseperson/arbitrator. It is not clear that the wiseperson/arbitrator had the authority to release the GaL, and even if she did, it is not readily apparent that the GaL was testifying solely about matters that occurred after her release. Wife presented her argument to the court, and it was rejected. Therefore, this did not present a due process problem.

{22} Wife's most troubling issue stemmed from her attempted cross-examination of the GaL. After the GaL described at length her recommendations and the reasons therefor, with few objections from Wife, none of which are specifically raised as substantive error on appeal, and after Husband's brief cross-examination of the GaL, the following exchange occurred when Wife began to cross-examine the GaL:

Wife: Ms. Rioux [GaL], I object to the hearsay in your testimony. The children have not been tardy—

Court: OK, time out. This is not the time for you to tell her what you think about her testimony. You may ask her questions.

Wife: Uh, it wasn't her testimony. She's saying that she's—

Court: OK, Ms. Thomas, you can argue with me or you can follow the rules. It's your choice. If you're going to argue with me, we're done. OK, you may ask [the GaL] questions concerning her report and recommendations. Do you have any? [Short pause.] Do you have any questions, ma'am?

Wife: Uh, I'll think of some.

[short pause]

Court: Well, you need to do so ma'am, because I'm not going to hold [the GaL] here all day, OK?

Wife: Uh, no, I don't.

We certainly expect judges to treat non-lawyer pro se litigants with courtesy, and advise them of proper procedures whenever reasonable. Here, the judge was clearly impatient with Wife, but upon Wife's attempt to argue with the GaL and the judge, the judge properly told her that she needed to ask questions. The judge did, ultimately, ask if she had any questions for the GaL. We cannot fault the trial court for limiting cross-examination to questions. *See* Rule 11–611 NMRA 1999. Wife answered in the negative as to whether she had any questions. We hold pro se litigants to the same standard of compliance with court rules and procedures as we do members of the bar. *See Udall v. Townsend*, 1998–NMCA–162, ¶ 9, 126 N.M. 251, 968 P.2d 341. The trial court did give wife an opportunity to be heard in this regard.

{23} Nor was Wife prevented from calling whatever witnesses she thought would help her case. Wife complains that being pro se prevented her from doing so. But there is nothing in pro se status alone that hampers Wife from presenting her case. The fact that she did not know how to do so is her own responsibility.

{24} Wife was not denied equal protection because she was unable to secure counsel. The equal protection clauses of the

state and federal constitutions "prohibit the government from creating statutory classifications that are unreasonable, unrelated to a legitimate statutory purpose, or are not based on real differences." *Madrid v. St. Joseph Hosp.*, 1996–NMSC–064, ¶ 34, 122 N.M. 524, 928 P.2d 250. The equal protection clause is one source on which the right to counsel in some cases is founded. *See Douglas v. California*, 372 U.S. 353, 356, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). As stated in *Douglas*, counsel is appointed for indigent defendants in criminal cases because of the otherwise disparate treatment of poor defendants and monied defendants. *See id.* at 357–58, 83 S.Ct. 814. However, the federal constitutional right to counsel is limited to criminal cases, in which fundamental rights of life and liberty are at risk. *See Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *see also Archuleta v. Goldman*, 107 N.M. 547, 553, 761 P.2d 425, 431 (Ct.App.1987) (holding due process right to appointed counsel applies only when unsuccessful litigant may be deprived of physical liberty). Similar concerns in termination of parental rights cases in our state gave rise to the statutory provision of appointed counsel for indigent parents in those cases. *See* NMSA 1978, § 32A–4–29(F) (1997). This custody issue is not of the same fundamental nature as the potential loss of personal liberty or of access to one's children because while Wife was in jeopardy of losing some time with her children, she was not in danger of entirely losing her relationship with them. Therefore, no such violation of equal protection exists here as a result of the Wife's lack of counsel. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (distinguishing permanent termination of parental rights by state from divorce and custody matters that are modifiable at parties' will or based on changed circumstances).

■ {25} Nor did the court abdicate its decision-making responsibility to the GaL. The court decided to adopt the GaL's recommendation. This is not an uncommon practice, as the GaL has direct experience with the children and is mandated to act in their best interests. *See generally* § 40–4–8(A); NMSA 1978, § 40–4–9 (1977). There is no requirement that the trial court hear direct testimony from individuals, be they counselors, teachers, medical professionals, or others, to whom the GaL has spoken in coming to her recommendations. *Cf.* Rule 11–703 NMRA 1999 (bases of expert opinion need not be admissible in evidence). We see nothing indicating that the trial court abdicated its fact finding role.

## B. *Order to Seal Record*

■ {26} Local Rule 111 of the Second Judicial District, LR2–111 NMRA 1999, governs when the court may seal court records. That rule states:

> The court's policy is to allow public access to official court files and other records. Accordingly, no court file or other record shall be sealed from public inspection, with the exception of records containing matters made confidential by law and court clinic records. In extraordinary cases the court may seal a file or other record upon a party's written motion or the court's own motion, and showing of good cause. The sealed records shall remain part of the court file or other record.

{27} Husband moved to seal the record of this case, alleging that Wife "repeatedly and continually makes outrageous, unsubstantiated allegations against [Husband] which would be libelous and slanderous if stated or published in any other forum but pleadings." He did not offer any more detail as to what statements he was referencing, either in the trial court or on appeal, and no hearing was held on this motion. Nor did we discover in the record any statements that would render this an "extraordinary case," as required by LR2–111, beyond the usual acrimonious divorce and custody case. The rule itself squarely places the burden on the party who wishes to seal the record, and Husband has failed to carry this burden.

{28} The favored public policy expressed in the rule is also a principle of common law. *See, e.g., United States v. Hickey*, 767 F.2d 705, 708 (10th Cir.1985). In *Hickey*, the Tenth Circuit acknowledged the common law right to inspect and copy judicial records, and explained that the purpose behind the right is to aid in preserving the integrity of

the judicial process. *See id.* Although there are exceptions to both the rule and the common law right, such as when competing interests outweigh the need for access to court files, we see no such reason in this case for the court to have diverged from the standard policy of allowing public access to court files. *See id.; cf. Spadaro v. University of N.M. Bd. of Regents,* 107 N.M. 402, 404–05, 759 P.2d 189, 191–92 (1988) (discussing the "rule of reason" analysis, which balances the right of access to public records against public policy considerations favoring confidentiality). We hold that the court erred in granting Husband's motion upon the showing made below.

### C. Order Prohibiting Further Hearings

■ {29} In October 1997, the GaL filed a motion to prohibit further hearings in the case until such time as Wife paid her portion of the GaL's fees. At the time of the motion, the GaL alleged that Wife owed more than $9000 in outstanding fees. The trial court granted the GaL's motion. Mother contends that this sanction violated her due process rights, because the reason she failed to pay was her indigency, rather than willful violation of the court's orders to pay. Due process of law prohibits a state from denying judicial access to indigents in a divorce proceeding on the basis of their inability to pay court fees and costs. *See Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *cf. In re the Forfeiture of $2,730,* 111 N.M. 746, 749, 809 P.2d 1274, 1277 (1991) (holding "indigency may not deprive a claimant of the right to stay enforcement of a forfeiture judgment").

■ {30} At the motion hearing, the GaL informed the court that she believed that "so long as people are not being required to be responsible for the costs that they incur and that they cause other people that the litigation will go on and on." She went on to note that "if [she] thought for one minute that these children were in a bad situation or an unhealthy situation, where it was important to have other hearings, I certainly wouldn't do this." Wife's argument at the hearing consisted of a constitutional challenge to the use of this sanction in order to secure fees

and of citation to several cases, including *Boddie,* that she indicated stood for the proposition that a litigant cannot be deprived of access to the courts based on indigency. At the close of the hearing, the court granted the motion, noting that "this is not the same situation as the cases that you've cited to me, so I'm going to grant the Guardian ad Litem's motion, with respect to a hearing that involves the Guardian ad Litem." Wife reiterates her argument on appeal. We agree with Wife's assertion that she cannot be precluded from further court hearings based solely on her inability to pay the GaL's fees. This situation is analogous to *In re the Forfeiture of $2,730* and the cases cited therein. *See id.* at 749, 809 P.2d at 1277. In that case our Supreme Court relied on the spirit of the United States Supreme Court's cases that ruled that indigents could not be denied access to the courts based on their inability to pay court costs and fees. *See id.* The GaL's fees are the sort of incidental court costs that, if Wife demonstrated indigency, her failure to pay should not serve to deny her access to further hearings.

{31} Although Wife did not directly articulate her indigency argument to the trial court, she did file an affidavit of indigency the day before the hearing. This filing, in addition to Wife's arguments at the motion hearing, should have alerted the court to Wife's argument. *Cf.* Rule 12–216(A) NMRA 1999; *Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540–41, 893 P.2d 428, 436–37 (1995) (holding an objection sufficient if it alerts the trial court to the substance of the argument). The trial court erred in failing to consider this potentially weighty constitutional issue. Therefore, we remand this issue to the trial court to make a finding as to whether Wife was, in fact, indigent, and if she was, to reverse the order prohibiting further hearings for nonpayment of the GaL's fees.

### D. Other Constitutional Claims

■ {32} Wife also raises various other constitutional claims, which are without basis in law. We see no merit in her equal protection claim that she was deprived of custody based on her gender. There is no support for this contention in the record, and

Wife does not point us to any. The fact, by itself, that the trial court awarded custody to Husband is not a basis for inferring gender bias. Nor is this divorce and custody case a criminal case that required the court to appoint Wife an attorney. Lastly, Wife is not "enslaved" or the subject of involuntary servitude as a result of the trial court's decision. Neither Husband nor the GaL is in a "position of absolute power" over her. Husband merely has the right to make legal decisions on the children's behalf, of which he is required to keep Wife informed.

## III. CONCLUSION

{33} We reverse the trial court's order to seal the record. We remand the issue of the order to prohibit hearings for a determination of indigency. If Wife is found to be indigent, this order too is reversed. The trial court's remaining decisions in this case are affirmed.

{34} **IT IS SO ORDERED.**

BUSTAMANTE, and SUTIN, JJ., concur.