This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**RICHARD M. GIOVANETTI,**

    Petitioner-Appellee,

v.                                              **NO. 30,703**

**DOLLY UZUETA,**

    Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Gary M. Jeffreys, District Judge**

Jeffrey W. Smith
Deming, NM

for Appellee

Caren I. Friedman
Santa Fe, NM

Sherman & Sherman
Frederick H. Sherman
Deming, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Respondent, Dolly Uzueta, appeals from the district court's custody order. Respondent argues that the district court (1) abused its discretion in taking judicial notice of adjudicative facts from previous Children, Youth and Families Department (CYFD) proceedings, (2) deprived Respondent of due process by taking judicial notice of the adjudicative facts of the CYFD proceedings, and (3) abused its discretion in granting Respondent limited responsibility. We affirm.

**BACKGROUND**

On January 22, 2007, Respondent and Petitioner, Richard Giovanetti, entered into a parenting plan and joint custody agreement in which they agreed to a time sharing plan with regard to their son, who would remain living with Petitioner. It was approved by the court. The court entered the divorce decree on April 30, 2007.

On June 12, 2007, CYFD filed an abuse and neglect petition against Respondent relating to Respondent's daughter. During that proceeding, custody of the daughter was awarded to Petitioner, who was declared the daughter's presumptive father because he and Respondent were married when the daughter was born. The case was dismissed.

On May 15, 2009, Respondent filed a motion to allow Respondent visitation, alleging that Petitioner was denying her "consistent reliable visitation" with the

children, that she was "aware that her relationship with [Kenneth] Perrault places the minor children in danger[,]" that she wished visitation "while she continues her recovery as a victim of . . . [d]omestic [v]iolence perpetrated by . . . Perrault[,]" and that "until she can prove further to [the] court that the minor children can be safe in her care she will be subject to supervised visitation." Respondent requested that mediation be ordered to establish her visitation.

After various, unsuccessful mediation attempts, on February 5, 2010, Respondent filed an expedited motion to enforce custody and time sharing with her daughter and to establish a time sharing agreement and custody with her son. She alleged that Petitioner was only permitting her one hour of supervised visitation each week. On March 16, 2010, Petitioner filed his response to Respondent's motion and a motion for the court to take judicial notice of the record in the abuse and neglect case, adopt the findings in the abuse and neglect case, and order a new parenting plan because the previous plan had "been superceded by other events and orders."

The district court held a hearing on March 16, 2010 and April 13, 2010. It concluded that there had been "a substantial and material change in circumstances from the initial parenting plan in January 22, 2007 due primarily to . . . Respondent's drug use and association with . . . Perrault which adversely reflected on the quality of care and safety of her children" and, as a result, "her relationship with her children

3

[had] suffered." It continued joint custody, designated Petitioner as the primary custodial parent, and ordered periods of responsibility with Respondent, starting "in graduated phases until the relationship between . . . Respondent and the children have progressed to allow greater periods of responsibility."

**JUDICIAL NOTICE**

Respondent argues on appeal that the district court abused its discretion by taking judicial notice of adjudicative facts from the abuse and neglect proceeding. Appellate review requires that the party requesting review have preserved the issue raised on appeal by fairly invoking a ruling by the district court on the issue. Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court.").

Respondent argues that she preserved her objection to Petitioner's motion that the district court take judicial notice of the abuse and neglect case by filing supplemental requested findings of fact and conclusions of law addressing the issue. Indeed, Respondent filed supplemental requested findings and conclusions objecting to the court's taking judicial notice of the abuse and neglect case, but she did not do

4

so until August 4, 2010. The court had entered its findings of fact and conclusions of law on June 8, 2010 and its final order on the motions on July 23, 2010.

This Court has stated that

[t]he primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*Gerke v. Romero*, 2010-NMCA-060, ¶ 18, 148 N.M. 367, 237 P.3d 111 (internal quotation marks and citation omitted). Respondent's filing of her requested findings and conclusions after the district court had already entered its final order thwarted the purposes of the preservation rule that the district court be timely alerted so that it could avoid or correct error and that Petitioner have the opportunity to respond to Respondent's position for the benefit of the district court. *Cf. English v. English*, 118 N.M. 170, 174, 879 P.2d 802, 806 (Ct. App. 1994) (holding that the wife had preserved issues raised in her requested findings and conclusions filed after the court's first supplemental judgments because the court had withdrawn its first supplemental judgment and the wife's appeal was from the second supplemental judgment).

Moreover, Respondent's supplemental requested findings and conclusions were not timely. Rule 1-052(C) NMRA requires supplemental findings and conclusions to

5

be filed within ten days "after the court announces its decision." The district court announced its decision in its findings of fact and conclusions of law entered June 8, 2010. Respondent did not file her supplemental requested findings and conclusions until August 4, 2010, fifty-seven days later.

Respondent did not preserve her argument concerning judicial notice for appeal. As a result, we do not address the issue. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 14, 125 N.M. 748, 965 P.2d 332 (stating that this Court will not address arguments not preserved for review).

**DUE PROCESS**

In connection with judicial notice, Respondent also argues that the court's taking of judicial notice of the abuse and neglect case violated her right to due process under the United States and New Mexico constitutions. But, again, Respondent did not preserve this issue for appellate review by raising it in any manner in the district court, except in her untimely supplemental requested findings and conclusions. In this regard, Respondent asserts that this Court may nevertheless address the issue, in its discretion, because it involves the fundamental right of Respondent to raise her children. *See* Rule 12-216(B)(2) (providing that the preservation requirement does not preclude the court from exercising its discretion to address an unpreserved issue involving the fundamental rights of a party); *State ex rel. Children, Youth & Families*

6

*Dep't v. Maria C.*, 2004-NMCA-083, ¶ 24, 136 N.M. 53, 94 P.3d 796 ("A parent's fundamental liberty interest in the care, custody, and management of their children is well established.").

Respondent relies on *State ex rel. Children, Youth & Families Department v. Brandy S.*, 2007-NMCA-135, 142 N.M. 705, 168 P.3d 1129, in support of her position. In *Brandy S.*, the mother in a proceeding to terminate her parental rights did not preserve her appellate argument that the district court improperly took judicial notice of the CYFD case file. *Id.* ¶ 21. This Court nonetheless "reluctantly" considered the argument because it was "plausible that the district court relied on the case file for facts not established at the TPR proceedings." *Id.* We held that there was no violation of the mother's due process rights because (1) the district court did "not appear to have relied on evidence that was not properly established at the TPR hearing" and (2) the mother did not demonstrate that "there [was] a reasonable likelihood that the outcome of the case might have been different" if the district court did not take judicial notice of the case file. *Id.* ¶ 31 (alteration, emphasis, internal quotation marks, and citation omitted).

Were we to exercise our discretion to consider Respondent's argument despite the lack of preservation, we would reach the same conclusions as we did in *Brandy S.* The district court took judicial notice of specific facts concerning the abuse and

neglect case in Paragraph 3 of its findings of fact. Petitioner testified to the facts contained in Subparagraphs A, B, E, and H at the hearings on the motions. The facts that were not the subject of testimony concern the listing and dismissal of Perrault; the no contest pleas, dismissal of two counts, and adjudication order; the listing of Petitioner as a party; the lack of objection to Petitioner as a foster parent; and the failure of efforts at reunification and filing of a termination petition. We do not believe that these facts, primarily procedural in nature, might reasonably have affected the district court's decision. *See id.*

Respondent contends that, despite the district court's statement in its findings of fact that it did not take judicial notice of facts except as stated in Paragraph 3 of its findings, the record demonstrates that "the district court judicially noticed the CYFD proceedings as a whole" leading "to a severely lopsided visitation award to" Respondent. Respondent states that the district court used the facts of the abuse and neglect case that "were not independently proved" in this case "to bolster its ultimate findings." Respondent particularly cites instances in which the court allowed Petitioner to testify about "reliable information from another source," questioned Petitioner about the events in the abuse and neglect case, condoned Petitioner's actions limiting Respondent's involvement with the children, and questioned and made comments to Dr. Howard Daniels about the facts of the abuse and neglect case.

We do not agree with Respondent's position that seems to require the district court to have ignored the facts of the abuse and neglect case. Although Respondent's testimony differed, Petitioner testified to the facts set forth in the district court's Finding of Fact No. 3(A). Petitioner was at the apartment for approximately one and one-half hours. He called the police, and CYFD ultimately came to the apartment.

With respect to testifying about "reliable information," Respondent's attorney asked Petitioner at the hearing whether there was anything about their daughter "that makes her different in terms of her need of her mother." Petitioner responded in part that she "was the one that got hurt the worst." He added that "she was the one that got left in the apartment by herself and got taken away." The question posed related to Petitioner's understanding about his daughter's needs. Petitioner briefly referred to the CYFD files and police reports, and Respondent's attorney said he was not talking about hearsay and only wanted personal facts. The judge indicated that "acquired knowledge from a reliable source about allegations" or "reliable information" would be sufficient. The district court has discretion regarding the admission of evidence. *Zia Trust, Inc. v. Aragon*, 2011-NMCA-076, ¶ 27, 150 N.M. 354, 258 P.3d 1146. Further, after this exchange, Petitioner only testified as to his personal knowledge regarding the incident that led to the CYFD case and did not testify regarding the details of the CYFD case or respond to questions regarding Respondent's ability to

9

care for the children even when asked by the district court.

As to the judge questioning Petitioner about the abuse and neglect case, the judge's questions related to incidents Petitioner personally observed and the manner in which the parties had followed the parenting plan that the court had approved; it did not relate to the abuse and neglect case except as to the time frame. Nothing indicates that the judge improperly questioned Petitioner about the abuse and neglect case. Similarly, the court's Finding of Fact No. 4 states that Petitioner "unilaterally restricted" Respondent's visitation with the children around the time that the abuse and neglect case was begun "because of that incident and . . . Respondent's suspected abuse of controlled substances and her association with . . . Perrault." The court stated that it "cannot say such actions by Petitioner were unjustified." Given the testimony concerning the incident, Respondent's substance abuse, and Perrault, nothing about the court's finding indicates that it improperly considered facts from the abuse and neglect case.

Lastly, the judge's questions and comments to Dr. Daniels also do not reflect any impropriety. Dr. Daniels gave an expert opinion concerning the impact on children when they are separated from a parent and Respondent's ability to be a safe parent. The judge questioned Dr. Daniels after cross-examination about the extent of Dr. Daniels' knowledge of the facts in the abuse and neglect case. The judge

10

explained that he was concerned about whether Dr. Daniels had sufficient factual information to render an opinion in this case. Dr. Daniels had stated that he learned certain facts of the abuse and neglect case from the testimony in the courtroom that day. Respondent's attorney did not object to the judge's questions. He did question the judge's interpretation of the reasons for dismissal of the abuse and neglect case in what appears to be legal argument on the issue. Because the judge's questions were relevant to the reliability of Dr. Daniels' expert opinion concerning Respondent's ability to provide safety to the children, they were not improper.

In each of the instances Respondent cites, the court had a proper basis to act as it did. In addition, although the judge had information about the abuse and neglect case, none of the instances indicates that the court took judicial notice of adjudicative facts in order to find facts in the case. *See City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 7, 147 N.M. 693, 228 P.3d 477 (stating that when a court takes judicial notice of a fact, it must do so on the record). There was no due process violation even if we were to exercise our discretion to address the issue.

**LIMITED PERIODS OF RESPONSIBILITY**

Respondent argues that the district court abused its discretion by granting Respondent such limited periods of responsibility under a joint custody award. The district court has "broad discretion and great flexibility in fashioning a custody

arrangement that will serve the best interests of the children." *Thomas v. Thomas*, 1999-NMCA-135, ¶ 10, 128 N.M. 177, 991 P.2d 7 (internal quotation marks and citation omitted). We reverse only for an abuse of this broad discretion, and if there is substantial evidence to support the district court's decision, there is no abuse of discretion. *Id.*

We agree with Respondent that under a joint custody award, each parent is entitled to "significant, well-defined periods of responsibility" for the children. NMSA 1978, § 40-4-9.1(J)(1) (1999). We further agree that the guiding principle in a custody determination is the best interest of the child or children. NMSA 1978, § 40-4-9(A) (1977). Moreover, to modify the parties' January 22, 2007 physical custody arrangement, Petitioner had the burden to prove to the district court that there was a substantial and material change in circumstances affecting the best interest of the children. *Jaramillo v. Jaramillo*, 113 N.M. 57, 67, 823 P.2d 299, 309 (1991). With this predicate, we turn to whether there was substantial evidence to support the district court's determination that there was a material and substantial change of circumstance and, if so, whether the district court acted within its broad discretion in establishing the periods of responsibilities of the parties.

The district court concluded that there had been "a substantial and material change in circumstances from the initial parenting plan in January 22, 2007 due

primarily to . . . Respondent's drug use and association with . . . Perrault which adversely reflected on the quality of care and safety of her children." It further concluded that Respondent's "actions have caused her relationship with her children to have suffered."

The district court found, and Respondent does not dispute, that she has a history of substance abuse. Respondent is a domestic violence victim who continued to attend counseling and completed a substance abuse program. She testified that she has been drug free since November 2008. Respondent's witnesses testified to Respondent's successful recovery and/or her ability to properly parent the children. Rosemary Armijo, a social worker and personal friend of Respondent, testified about the children's "very close" and "bonded" relationship with Respondent during home visits from August to October 2008. She was not aware of activities after that time. She believed that the children needed Respondent and that they should have equal time with her, even though Respondent had had her obstacles and had "fallen back some." Kerri Jorgensen of the NAVA substance abuse counseling clinic testified that Respondent's drug tests from November 2008 to March 2009 and from November 2009 to January 2010 were all negative. Delores Lopez, a social worker who worked with Respondent daily on substance abuse and domestic violence issues, testified that Respondent performed excellently, graduated the program, and attended after care.

13

She did not have concerns about Respondent parenting the children. Dr. Daniels also testified he believed that Respondent is a safe parent when she is not abusing substances and that the children should have equal time with her as quickly as possible but after incremental steps.

Against this testimony, the district court weighed the testimony of Petitioner concerning his description of the incident that gave rise to the abuse and neglect case and the condition of the daughter and the apartment. Respondent testified about the involvement of Perrault and drug use in the incident. Petitioner and Respondent provided testimony about Perrault, and the district court took judicial notice that Perrault was convicted of a crime and sentenced to prison. Respondent testified about her suffering as a domestic violence victim. For whatever the reasons, since the incident, Respondent had not had significant periods of responsibility with the children for an extended period of time. As the district court found, her relationship with the children has suffered because of her relationship with Perrault and her connection to drugs. In addition, the judge interviewed the children *in camera.*

The district court, acting as factfinder, has the responsibility to weigh the evidence and to judge the credibility of the witnesses. *See New Mexicans for Free Enter. v. City of Santa Fe,* 2006-NMCA-007, ¶ 71, 138 N.M. 785, 126 P.3d 1149. Further, as we have discussed, the district court acts with broad discretion in deciding

14

issues of child custody. *See Thomas*, 1999-NMCA-135, ¶ 10. The district court ordered that the parties' joint custody arrangement should continue, that Petitioner should be designated the primary custodian, and that Respondent should have specific periods of responsibility with the children. The court further ordered that Respondent's periods of responsibility "should start in graduated phases until the relationship between . . . Respondent and the children [has] progressed to allow greater periods of responsibility." Under these standards of review, there was substantial evidence to support the district court's conclusion that there was a material and substantial change of circumstances since the January 22, 2007 parenting plan went into effect. Further, we cannot say that the district court abused its broad discretion by concluding that its custody order was in the best interest of the children, particularly in view of the district court's conclusion that Respondent's periods of responsibility should be graduated and increase when her relationship with the children progresses.

**CONCLUSION**

We affirm the custody order of the district court.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

WE CONCUR:

_____

**CYNTHIA A. FRY, Judge**

_____

**MICHAEL E. VIGIL, Judge**