This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**SHERRY RASCON**

  Petitioner-Appellant,

**v.**          **No. 33,545**

**RUDY RASCON, a/k/a**
**RUDOLFO RASCON, a/k/a**
**RUDOLPHO RASCON,**

  Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark Terrance Sanchez, District Judge**

The Sawyers Law Group
Melissa A. Sawyers
Hobbs, NM

for Appellant

Laura K. Castillo
Hobbs, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Judge.**

{1} Mother appeals from the district court's denial of her request to change the primary physical custody of Child from Father to Mother. Our notice proposed to

affirm. Mother filed a memorandum in opposition, which we have duly considered. We remain unpersuaded by her arguments, and therefore affirm.

{2}     **Point One**: Mother continues to argue that the district court abused its discretion in denying her request to change the primary physical custody of Child from Father to Mother, because there had been a material change of circumstances that affected the best interests of Child. [MIO 2-5] *See Thomas v. Thomas*, 1999-NMCA-135, ¶ 10, 128 N.M. 177, 991 P.2d 7 ("A court may modify a custody order only upon a showing of a substantial change in circumstances since the prior order that affects the best interests of the children.").

{3}     Mother claims that she should have primary physical custody of Child because Father was preventing visitation; Child injured her knee and Father did not get her proper medical care throughout the span of the injury and the surgery that followed; Father's home caught on fire in the middle of the night when Child was home alone and the home did not have fire alarms or fire detectors; Father was using marijuana; Father was arrested in Gaines County, Texas during a weekend when Child was with Mother, and because Father was incarcerated at the time the parties were supposed to meet, Mother had to take Child to Hobbs; Father has failed to comply with court orders; Father did not cooperate with the Rule 11-706 NMRA expert; Child's grades have declined since she was placed in Father's primary physical custody; Father failed

to provide Child with dental care; and Father caused a significant deterioration in the parent/child relationship between Mother and Child. [MIO 2-3]

{4} In support of her argument, Mother relies on *Schuermann v. Schuermann*, 1980-NMSC-027, 94 N.M. 81, 607 P.2d 619. [MIO 3] In *Schuermann*, our Supreme Court stated that "[t]he 'best interests' test is broad and vests the trial judge with considerable discretion." *Id.* ¶ 8. "The exercise of discretion by the trial judge, however, must be consistent with the evidence." *Id.* Mother asserts:

> Evidence of an arrest, marijuana use, inappropriate health and dental care, poor performance in school, leaving the child at home during the middle of the night in a home that caught fire, failing to enforce visitation, and causing a disintegration of the parent/child relationship between the Mother and the Child is not consistent with a ruling that staying with the Father is in the 'best interests' of this minor child.

[MIO 4]

{5} As set forth in our notice, the district court acknowledged Father's arrest and found that the incident was the result of a mistake that did not affect Child's interests. [CN 5; RP Vol.II/339, ¶ 13] The district court also acknowledged that Father had used marijuana in the past, but he was no longer using it [CN 4; RP Vol.II/339, ¶ 12], and the district court made it clear that it does not condone Father's past use of marijuana. [CN 5; RP Vol.II/343, ¶ F] Additionally, the district court found that Child's grades had declined since she had been in Father's primary custody, but the district court found that the decline in grades was due in part to the visitation schedule that required

3

Child to travel to Texas to see Mother. [CN 5; RP Vol.II/339, ¶¶ 14-15] With respect to the fire, the district court found that Mother failed to demonstrate that Father caused the fire or acted inappropriately after he learned about the fire. [CN 4; RP Vol.II/339, ¶ 11] The district court also found Mother's remaining assertions to be immaterial and not supported by credible testimony, including her assertion that Father failed to cooperate with the Rule 11-706 expert. [CN 5; RP Vol.II/339-40, ¶¶ 16-17]

**{6}** Mother asserts that "[t]he 'morality, character or integrity' standard should still be used to determine the capacity of the custodial parent, and it should function to determine the child's best interests." [MIO 3-4 (quoting *Schuermann*, 1980-NMSC-027, ¶ 8)] Mother argues that Child is not receiving proper care in Father's care, and she suggests that this is due to Father's "morality, character or integrity." [MIO 3-4]

**{7}** Although the district court should consider a parent's morality, character, and integrity when determining the best interests of a child, the district court may not make a morality determination before employing the best interests of the child test. *See id.* ¶ 5 (rejecting the argument that "before the 'best interests of the child' test can be employed, the [district] court must first find that the morality, character or integrity of the custodial parent has changed since the original award of custody"). Ultimately,

the district court's "primary concern and consideration must be for the child's best interests." *Id.* ¶ 6.

{8}     In this case, the district court addressed Father's alleged morality, character, and integrity deficiencies and, after considering all the evidence, the district court determined that there had been no material change in circumstances that would justify modification in primary custody and that it was in Child's best interests to remain in the primary custody of Father. [RP Vol.II/343, ¶¶ E, F]

{9}     In our calendar notice, we stated that we will not reweigh the evidence on appeal. [CN 8] *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 ("[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder."); *Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 8, 111 N.M. 417, 806 P.2d 66 ("[T]he appellate court will not reweigh the findings of the trial court involving disputed testimony or inferences to be drawn therefrom, nor the trial court's determination as to the credibility of the witnesses.").

{10}     In her memorandum in opposition, Mother asserts that she is not asking this Court to reweigh the evidence, but instead, she is asking this Court to find that the district court abused its discretion, because its ruling was not consistent with the evidence. [MIO 4] *See Schuermann*, 1980-NMSC-027, ¶ 8. Mother's memorandum

in opposition highlights some of the evidence, and based on that evidence, Mother asks this Court to determine that the district court erred in denying her request for primary physical custody of Child. We will not view the evidence in isolation and we will not ignore the district court's credibility determinations. *See Clayton v. Trotter*, 1990-NMCA-078, ¶ 5, 110 N.M. 369, 796 P.2d 262 (stating that "as an appellate court, we do not make any determination of the credibility of witnesses").

{11} We conclude that there was substantial evidence to support the district court's decision. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12 (providing that in reviewing a substantial evidence claim "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached"). Therefore, the district court did not abuse its discretion in denying Mother's request to change the primary physical custody of Child from Father to Mother. *See Thomas*, 1999-NMCA-135, ¶ 10 ("We will overturn the [district] court's custody decision only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence."); *Clayton*, 1990-NMCA-078, ¶ 5 ("In matters of custody, the trial courts have wide discretion; we will overturn an award only when there has been a manifest abuse of discretion.").

{12} **Point Two**: Mother maintains that the district court gave too much weight to the in-camera meetings with Child. [MIO 6] As stated in our notice, NMSA 1978, §

40-4-9(B) (1977) provides that the district court shall consider the desires of a minor child, who is fourteen years of age or older. [CN 7-8] Nevertheless, the district court is not conclusively bound to award custody based on the child's preference. [CN 8] *See Normand ex rel. Normand v. Ray*, 1990-NMSC-006, ¶ 8, 109 N.M. 403, 785 P.2d 743.

{13}    We proposed to conclude that the district court did not give too much weight to Child's preference, because it considered other evidence in addition to Child's preference. [CN 8] For example, the district court found that Child has a strong emotional relationship with Father and she has strong ties to her family, friends, and classmates in Hobbs. [CN 8; RP Vol.II/340, ¶¶ 18, 20]

{14}    In her memorandum in opposition, Mother claims that the district court's determination that Child has a strong relationship with Father and strong ties to Hobbs was based "solely" on the in-camera meetings with Child. [MIO 6] This assertion is not consistent with the record.

{15}    According to the Rule 11-706 expert's report, Child expressed a strong desire to live with Father in Hobbs, Child did not want to leave her friends in Hobbs, Child demonstrated a good relationship with both of her parents, Child was a member of her school's volleyball team, Child's principal reported that Child was doing well in all of her classes and she had perfect attendance. [RP Vol.II/256-57] These facts support

the district court's determination that Child has a strong relationship with Father and strong ties to Hobbs. Therefore, we disagree with Mother's assertion that the district court gave the in-camera meetings with Child too much weight.

{16}    **Point Three**: Mother claims that the district court erred in failing to give appropriate consideration to the Rule 11-706 expert's recommendations. [MIO 7] In our calendar notice, we proposed to reject this argument because the expert's report indicated that the expert was not able to make a recommendation regarding whether Father or Mother should be Child's primary custodian. [CN 8-9; RP Vol.II/260]

{17}    In her memorandum in opposition, Mother acknowledges that the expert's report did not make a recommendation regarding Child's primary custodian. [MIO 7] However, Mother claims that the expert submitted a second written report, which "addressed the medical issues of the Child, including the lack of physical therapy as prescribed by the Doctor, the Child's problems in school, and the failure of the Father to communicate with the Mother and to allow Mother to visit." [MIO 7] Mother does not assert that the second report recommends that Mother should be Child's primary custodian. As stated in our notice, even if the expert recommended that Mother should have primary custody of Child, the district court was not required to follow the expert's recommendation. [CN 9] *See Sanchez v. Molycorp, Inc.*, 1985-NMCA-067, ¶ 21, 103 N.M. 148, 703 P.2d 925 (stating that "the opinions of an expert even where

uncontradicted, are not conclusive on facts in issue and the fact finder may reject such opinion in whole or in part").

**CONCLUSION**

{18} For the foregoing reasons, we conclude that the district court did not abuse its discretion by denying Mother's request for primary custody of Child. We accordingly affirm.

{19} **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

9