**Certiorari Denied, June 8, 2011, No. 33,022**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-076**

**Filing Date: April 18, 2011**

**Docket No. 29,160**

**ZIA TRUST, INC., as Personal Representative
of the ESTATE OF BRYAN TRUJILLO,**

     **Plaintiff-Appellant,**

**v.**

**LEYNA ARAGON,**

     **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie M. Huling, District Judge**

Carter & Valle Law Firm, P.C.
Richard J. Valle
C.D. Carter, III
Albuquerque, NM

for Appellant

Simone, Roberts & Weiss, P.A.
Kathleen M. Mixon
Meena H. Allen
Albuquerque, NM

for Appellee

## OPINION

**WECHSLER, Judge.**

**{1}** We consider in this appeal both the district court's decision not to allow an emergency room doctor's opinion concerning a decedent's chance of survival from fatal

1

injuries after being struck by an automobile, as well as issues at trial pertaining to the defense of suicide as an intervening cause.

**{2}** As to the doctor's opinion testimony, the district court did not allow the testimony on the basis that it was conjectural and unreliable. It granted partial summary judgment precluding the claim of lost chance of survival. We hold that the district court did not abuse its discretion in disallowing the testimony and affirm the district court's grant of partial summary judgment. As to the trial issues, we hold that (1) the district court did not abuse its discretion in allowing the use of the term "suicide" at trial, and (2) even if the instruction on suicide as an independent intervening cause was erroneous, the error was harmless because the jury concluded that there was no negligence on the special verdict form. We affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

**{3}** Plaintiff Zia Trust, Inc., as personal representative of the estate of Bryan Trujillo, Decedent, brought suit against Defendant Leyna Aragon, alleging claims of negligence, negligence per se, wrongful death (collectively, wrongful death claims) and lost chance of survival as the result of an automobile accident in which Decedent, a pedestrian, died. The district court granted Defendant's motion for partial summary judgment with regard to the lost chance of survival claim, and the wrongful death claims proceeded to trial.

**{4}** The facts underlying the claims involve an automobile accident between Defendant, while driving an automobile, and Decedent, while a pedestrian, causing fatal injuries to Decedent. With respect to the wrongful death claims, Plaintiff alleged that Defendant caused Decedent's death by her negligence and failure to comply with applicable laws. As the basis for its lost chance of survival claim, Plaintiff alleged that Defendant fled the scene of the accident, did not provide assistance to Decedent, and delayed the provision of medical services to Decedent, who was alive after the accident. To support its allegations of lost chance of survival, Plaintiff retained as an expert Dr. Philip J. Froman, who opined that immediate action at the time of the accident could have increased Decedent's likelihood of survival by twenty-five percent.

**{5}** Many of the facts of the accident and its aftermath are disputed. There was testimony that Decedent, age twenty, had been drinking the night of the accident with Barbara Salazar and Jennifer Gallegos at Gallegos' home. Donna Archibeque was also present. Decedent and Salazar had a lengthy relationship and were the parents of two children. Decedent was drunk and became upset with Salazar and left. He returned in about fifteen minutes. When he came to the door, Salazar and the others were laughing. Decedent again became upset, and when Salazar told him to "shut up," Decedent said something to the effect that he was going to kill himself and that he was "going to go die." He again left. In a subsequent telephone conversation with Salazar, Decedent told her that he "was walking between cars[.]"

2

**{6}** Defendant, age seventeen, was driving with Lenore Moya and Tim Cogis in the car with her. Defendant testified that she had consumed a small amount of marijuana the night of the accident. She saw a shadow "move across the road[,]" toward a truck in front of her, and "then to the shoulder." The truck swerved. She thought the shadow was an animal. She slowed down, and a man came running from her blind spot and threw himself on her car. He was wearing dark clothes.

**{7}** Right after the accident, Moya answered Decedent's cell phone and spoke with Salazar. Believing that there had been an accident, Salazar and Archibeque drove for a couple of minutes to find Decedent. When they arrived, Decedent was breathing, responded to Salazar by trying to lift his head, and squeezed Salazar's hand. In the meantime, Defendant had panicked and left the scene of the accident because Cogis possessed marijuana. John Gordon, a deputy sheriff, drove upon the scene approximately five minutes after Salazar arrived. He reported the accident and checked Decedent's pulse, which was present.

**{8}** Living Cross Ambulance (Living Cross) responded to the scene three minutes after it received a dispatch call. A Living Cross supervisor, Allison Lopez, one of the responders, stated that Decedent "had sustained multi[-]system traumatic injuries." She observed, among other things, that "[D]ecedent's spine was exposed and part of his skull and brain matter was missing." Approximately eleven minutes after Living Cross arrived, its personnel could not discern any pulse. They were unable to revive Decedent, who died at the scene.

**{9}** The Office of the Medical Investigator (OMI) performed a "gross autopsy" or an external review of the body. It did not perform an internal or open autopsy. No x-rays were performed. The medical records indicated that Decedent sustained numerous external injuries, including fractures, abdominal injury, traumatic blood loss, cardiac arrest, flail chest, lacerations to the front of the head, foot fracture, right elbow open fracture, unstable pelvis, multiple leg fractures, right knee fracture, hypovolemia shock, and neck injury.

**{10}** Defendant filed a motion for partial summary judgment with respect to the lost chance of survival claim, challenging the validity of the claim and arguing that, even if there were a valid claim, Dr. Froman's opinions were insufficient to support such a claim. Defendant also filed a motion for summary judgment as to Plaintiff's other claims that is not relevant to this appeal except to the extent that facts developed by the parties in connection with that motion were used by the parties in connection with the motion concerning the lost chance of survival claim. The district court granted only the motion for partial summary judgment. The wrongful death claims proceeded to trial, at which Defendant raised as a defense the intervening cause of Decedent's suicide. The jury returned a verdict in favor of Defendant. Plaintiff appeals from the district court's judgment.

**{11}** On appeal, Plaintiff contends that the district court erred in (1) granting the motion for partial summary judgment, (2) allowing the jury to consider whether Decedent attempted suicide, and (3) instructing the jury that suicide was a defense to negligence. We turn to Plaintiff's arguments.

3

**LOST CHANCE OF SURVIVAL**

**{12}** The district court granted Defendant's motion for partial summary judgment on Plaintiff's claim of lost chance of survival. The district court stated that the problem with the claim, in part, was Dr. Froman's testimony. As to the testimony, it stated that: "This is guess; this is conjecture. This is not based on anything other than making assumptions that should not support any type of verdict. . . . It clearly would be allowing a jury to just guess, based on this." When denying Plaintiff's motion to reconsider partial summary judgment on lost chance of survival, the district court ruled that, even if Plaintiff had a claim, "the testimony of . . . Plaintiff's expert regarding this matter is too speculative and unreliable. The expert did not even possess the necessary facts to enable him to express a reasonably accurate conclusion." Plaintiff argues on appeal that the testimony of its expert, Dr. Froman, was sufficient for the jury to consider on the issue of lost chance of survival. We do not agree.

**{13}** Rule 11-702 NMRA entitled "Testimony by experts," governs the admission of expert testimony in our courts. The Rule states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

The three prerequisites for the admission of expert testimony under the rule are: (1) the witness must be qualified as an expert; (2) the specialized testimony must assist the trier of fact; and (3) the expert witness testimony must be limited to scientific, technical, or other specialized knowledge in which the witness is qualified. *State v. Alberico*, 116 N.M. 156, 166, 861 P.2d 192, 202 (1993). The party offering the evidence has the burden to satisfy these requirements. *State v. Morales*, 2002-NMCA-052, ¶¶ 21, 23, 132 N.M. 146, 45 P.3d 406.

**{14}** This case concerns the second prerequisite; there is no issue concerning Dr. Froman's qualifications as an emergency medical provider. In considering the second prerequisite, the district court has the duty to make sure that "an expert's testimony rests on both a reliable foundation and is relevant to the task at hand so that speculative and unfounded opinions do not reach the jury." *Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 12, 149 N.M. 140, 245 P.3d 585, *cert. granted*, 2010-NMCERT-012, ___ N.M. ___, ___ P.3d ___. This determination lies in the discretion of the district court. *See Alberico*, 116 N.M. at 169, 861 P.2d at 205 (stating that we review a district court's admission or exclusion or expert testimony for abuse of discretion). An abuse of discretion requires this Court to conclude that the district court's ruling "is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993).

{15} Plaintiff supported its response to Defendant's motion for summary judgment on lost chance of survival with two affidavits and Dr. Froman's deposition testimony. Affidavits of expert witnesses must present admissible evidence to be considered in connection with a motion for summary judgment. *See Galvan v. City of Albuquerque*, 85 N.M. 42, 45, 508 P.2d 1339, 1342 (Ct. App. 1973) ("The affidavit did not set forth facts admissible in evidence and was not entitled to consideration."); *see also Lopez v. Reddy*, 2005-NMCA-054, ¶¶ 5, 10, 14, 22, 137 N.M. 554, 113 P.3d 377 (upholding district court's Rule 11-702 exclusion of expert's affidavit in response to summary judgment motion); *cf. In re Estate of Keeney*, 121 N.M. 58, 61, 908 P.2d 751, 754 (Ct. App. 1995) (allowing affidavit of expert witness that presented admissible testimony that was not based on the expert's personal knowledge rather, it was opinion testimony of an expert, and therefore would have been admissible at trial).

{16} In connection with this case, Dr. Froman reviewed the reports of the OMI, Living Cross, as well as the deposition of Salazar, who was with Decedent at the scene of the accident. Dr. Froman stated his opinion that "if there had been an immediate call to EMS at the time of the traumatic event, there could have been an increased likelihood of survival of 25%." He supported his calculation with the resuscitation rates of the Abbreviated Injury Scale to arrive at a Trauma Injury Severity Score. He determined from the OMI report that Decedent suffered multiple rib fractures, hemothorax, pelvic fractures, open tib fib, and soft tissue injuries. He noted that the OMI report did not discuss an open head injury that would result in loss of brain matter as reported by Living Cross. There was no internal autopsy, and Dr. Froman needed to assume certain medical information to reach his opinion. For example, he did not know Decedent's respiratory rate, systolic blood pressure, and Glasgow Coma Scale. To compensate for the absence of information, Dr. Froman made assumptions in his scenario that resulted in a twenty-eight percent chance of survival.

{17} The district court did not abuse its discretion by declining Dr. Froman's testimony because it was speculative or conjectural. If a claim for lost chance of survival is recognized in this context, an issue we do not decide, Plaintiff would be required to establish through a medical expert that Defendant's failure to initiate emergency response caused the loss of chance of survival. *See* UJI 13-1635 NMRA (requiring evidence for lost chance claim from a medical expert establishing that the plaintiff lost a measurable opportunity to avoid a better outcome or survival due to the defendant's negligence); *Alberts v. Schultz*, 1999-NMSC-015, ¶ 29, 126 N.M. 807, 975 P.2d 1279 (stating that in claim for loss of chance of survival in medical malpractice case that evidence "must show to a reasonable degree of medical probability that the defendant's negligence caused the loss of the chance of a better result"). The district court concluded that Dr. Froman's testimony was too speculative to establish this causation.

{18} Although Dr. Froman did his best to quantify the possibility of Decedent's survival based in part on known facts established in the investigation of the accident, his opinion was necessarily based on information that was not available. Most significantly, there was no internal autopsy. Dr. Froman therefore did not know what brain or internal injuries Decedent had suffered. In addition, there were no x-rays from which he could ascertain the extent or existence of skull or back fractures. As a result, Dr. Froman opined about

5

Decedent's chance of survival without specific knowledge as to the cause of Decedent's death or the conditions that led to his death. From the nature of this type of information, the district court could have logically concluded that it was material to the issue that would have been before the jury—Decedent's chance of survival from the injuries that caused his death.

{19} To be sure, an expert witness may make assumptions based on evidence in the record to reach a conclusion that may be presented to a jury. *State v. Downey*, 2008-NMSC-061, ¶ 34, 145 N.M. 232, 195 P.3d 1244. However, to be admissible under Rule 11-702, an expert's testimony must assist the trier of fact. *Alberico*, 116 N.M. at 168, 861 P.2d at 204. This requirement focuses on the reliability and therefore the relevancy of the testimony. *Id.* To be relevant, expert testimony must "fit" the facts of the case and "prove[] what it purports to prove." *Downey*, 2008-NMSC-061, ¶ 30 (internal quotation marks and citation omitted). In addition, to provide admissible testimony, rather than inadmissible conjecture, an expert must "possess[] such facts" to enable the expert "to express a reasonably accurate conclusion." *Id.* ¶ 32.

{20} In *Downey*, our Supreme Court held that an expert's opinion concerning retrograde extrapolation did not fit the facts of the case because the expert assumed that the defendant had consumed his last drink prior to a collision. *Id.* ¶ 33. The defendant left the scene for five to ten minutes after the collision to call emergency assistance. *Id.* ¶ 2. Although the prosecution claimed there was circumstantial testimony that the defendant had not consumed alcohol after the collision, the time that the defendant ceased drinking was "impossible to pinpoint to a reasonable certainty." *Id.* ¶ 36.

{21} *Downey* is sufficiently similar to this case to assist us in our analysis. In *Downey*, the expert assumed that the defendant had not consumed alcohol after the collision. *Id.* ¶ 31. Indeed, there was evidence from which the expert could have made that assumption, although, as the Court determined, that evidence was not conclusive. *Id.* ¶ 36. As a consequence, the expert's testimony was too conjectural to assist the trier of fact. *Id.* ¶ 34.

{22} In this case, Dr. Froman made his assumptions from evidence that was available to him. His conclusions could not be conclusive, and they need not have been provided he had sufficient facts to support them. *See id.* ¶ 32 ("Expert testimony may be received if, and only if, the expert possesses such facts as would enable him to express a reasonably accurate conclusion as distinguished from mere conjecture." (internal quotation marks and citation omitted)). However, Dr. Froman lacked significant information concerning Decedent's internal injuries and cause of death. His assumptions, therefore, form a substantial part of the foundation for his opinion. The district court determined that Dr. Froman's opinion was conjectural without more concrete support such as that provided by the data concerning the internal injuries and cause of death. We agree with the district court that, without this information in the record, and even with Dr. Froman's testimony, the jury would have been required to speculate as to the extent of Decedent's injuries and cause of death in order to determine Decedent's chance of survival. The district court did not abuse its discretion in rejecting Dr. Froman's testimony on the basis that he did not have sufficient facts to enable him to express a reasonably accurate conclusion, and therefore his testimony was speculative or conjectural.

6

**{23}** We are not persuaded otherwise by Plaintiff's reliance on *Bass by Lewis v. Wallenstein*, 769 F.2d 1173 (7th Cir. 1985) (*Lewis*), and *Fuentes v. Reilly*, 590 F.2d 509 (3d Cir. 1979), because both cases are not on point. In *Lewis*, a jury returned a verdict in favor of the estate of a prison inmate for failing to provide emergency medical treatment and thereby denying the inmate his civil rights. 769 F.2d at 1176. The defendant doctor delayed responding to the call to go to the emergency room for ten to fifteen minutes. *Id.* at 1183. There was conflicting testimony as to whether the inmate was alive when he was discovered in his cell. *Id.* As to the causal connection between the defendant's delay and the inmate's death, all testifying doctors agreed that an immediate response was crucial and that "seconds count." *Id.* One expert supported his testimony with a study that established that "if basic life support is provided within five minutes and advanced cardiac life support within eight to ten minutes, the patient's chance for survival would be 10-30%." *Id.* The Seventh Circuit included this testimony in reaching the conclusion that, when viewed in the light most favorable to the plaintiff, there was sufficient evidence to support the jury's finding of a direct causal connection. *Id.* at 1184. Plaintiff argues that the testimony in *Lewis* is analogous to Dr. Froman's testimony. However, the context is entirely different. The issue in *Lewis* did not involve the review of the exercise of the trial court's discretion as to the admissibility of the testimony under Rule 11-702 or its equivalent. The testimony was admitted, and the question was whether it, along with other evidence, supported a jury verdict. *Lewis* has no bearing on this case.

**{24}** In *Fuentes*, in which the Third Circuit recognized a lost chance of survival claim under New Jersey law, the trial court had denied the admission of the plaintiff's expert witness's testimony based on its error in interpreting the testimony pertaining to proximate cause. 590 F.2d at 513. The Third Circuit reversed, specifically stating that the trial court had abused its discretion because it did not act on a correct legal premise. *Id.* Although Plaintiff in the case before us argues that the district court erred as a matter of law because (1) it did not consider all evidence for the purpose of summary judgment and (2) it did not permit Plaintiff to raise an inference from statistical evidence, we do not agree. As to Plaintiff's first argument, as we have discussed, the district court may exclude expert testimony offered in connection with summary judgment. *See Lopez*, 2005-NMCA-054, ¶¶ 5, 14, 22. As to the second, we do not rely on the use of statistical evidence in determining that the district court did not abuse its discretion; we agree with Plaintiff that it was entitled to do so. The district court made no mention of statistical evidence in ruling that Dr. Froman's testimony was too speculative and unreliable. The district court did not abuse its discretion when it concluded that the foundation for an expert's quantification of a possible result was insufficient.

### ISSUES CONCERNING WRONGFUL DEATH CLAIMS

**{25}** At trial of Plaintiff's wrongful death claims, Defendant took the position that Decedent committed suicide. On appeal, Plaintiff argues that the district court erred in allowing Defendant to use the term "suicide" and in instructing the jury that suicide was a defense to negligence through an independent intervening cause instruction.

**{26}** We first address Plaintiff's argument regarding the term "suicide." Plaintiff contends

that "suicide" only applies to circumstances in which a person takes his or her own life and not to a situation such as Defendant argued at trial in which a third person causes the death. Plaintiff points out that this Court in *Solorzano v. Bristow*, 2004-NMCA-136, ¶ 14, 136 N.M. 658, 103 P.3d 582, defined "suicide" as "a voluntary, deliberate, and intentional self-destruction by someone of sound mind." According to Plaintiff, the requirement of self-destruction limits suicide to circumstances in which the person, not another, takes the action to end the person's life. Plaintiff further supports its argument by citing *Fister ex rel. Estate of Fister v. Allstate Life Insurance Co.*, 783 A.2d 194, 197 (Md. Ct. App. 2001), in which the decedent asked a friend to point a gun at her while she pulled the trigger to kill herself. When she was unable to pull the trigger with the string she had attached, she told the friend to shoot her, which he did. *Id.* at 197. The Maryland Court of Appeals interpreted a statute permitting insurance companies to exclude coverage for death by suicide. *Id.* at 200-01. It held that the death was not suicide for the purposes of the statute and insurance policies at issue because the friend exercised his own will and "was ultimately responsible for" the death. *Id.* at 201. Plaintiff asserts that it was prejudiced at trial when the district court allowed the use of the term "suicide" over Plaintiff's objection because of the term's prejudicial nature.

**{27}** We need not determine the full scope of the term "suicide" in order to address Plaintiff's argument. Our case law has not interpreted the self-destruction aspect of suicide in the restrictive way that Plaintiff proposes. *See Solorzano*, 2004-NMCA-136, ¶ 16 (holding that the defendant had the burden of presenting evidence regarding the decedent's state of mind, motivation, and intent as to whether the decedent committed suicide even though the defendant was driving the vehicle she fell from). Moreover, *Fister* is distinguishable because it involved the interpretation of an insurance statute, a life insurance policy, and a third party who actually caused the death. 783 A.2d at 197-98, 201. A district court has discretion to ascertain the admission of evidence. *State v. Riley*, 2010-NMSC-005, ¶ 28, 147 N.M. 557, 226 P.3d 656 (stating that a district court has "a great deal of discretion in admitting or excluding evidence" (internal quotation marks and citation omitted)). In this case, Salazar testified that Decedent threatened to "kill himself" and had made similar threats in the past. We see little distinction between her terminology and the term "suicide" as defined in *Solorzano*, 2004-NMCA-136, ¶ 14. The district court did not abuse its discretion in allowing the use of the term "suicide."

**{28}** Plaintiff's claim that the district court improperly instructed the jury that suicide was an independent intervening cause is also without merit. The district court instructed the jury on Plaintiff's negligence claim. It continued the instruction by stating Defendant's contentions that Decedent was negligent and that Decedent's actions were an independent intervening cause of the accident. An independent intervening cause "relieves a negligent party of liability." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 24, 140 N.M 596, 145 P.3d 76. The jury returned the special verdict form in this case, stating that Defendant was not negligent. With that finding, the district court's instruction on independent intervening cause was not an issue and therefore the instruction, even if improper, was not prejudicial and therefore constituted harmless error. *See Blackburn v. State*, 98 N.M. 34, 37, 644 P.2d 548, 551 (Ct. App. 1982) ("A party complaining of faulty instructions must show prejudice before reversal is warranted.").

8

**CONCLUSION**

**{29}** We conclude that the district court did not abuse its discretion in excluding Dr. Froman's testimony. Without Dr. Froman's testimony, the district court did not err in granting partial summary judgment. We further conclude that the district court did not abuse its discretion in allowing the use of the term "suicide" at trial and that Plaintiff's argument concerning the impropriety of the independent intervening cause instruction is moot. We therefore affirm.

**{30}    IT IS SO ORDERED.**


                                                **JAMES J. WECHSLER, Judge**

**WE CONCUR:**


**JONATHAN B. SUTIN, Judge**


**MICHAEL E. VIGIL, Judge**

**Topic Index for *Zia Trust, Inc. v. Aragon*, Docket No. 29,160**


| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-SU | Suicide |

| **EV** | **EVIDENCE** |
|---|---|
| EV-EW | Expert Witness |
| EV-RC | Relevancy, Materiality, and Competency |
| EV-SC | Scientific Evidence & Daubert Standard |

| **TR** | **TORTS** |
|---|---|
| TR-LV | Lost Chance of Survival |
| TR-MM | Medical Malpractice |
| TR-NG | Negligence |
| TR-WD | Wrongful Death |