This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**MARY ANN MADRID,**

Plaintiff-Appellant,

v.                                                     **NO. 31,244**

**BRINKER RESTAURANT CORPORATION**
**d/b/a CHILI'S GRILL & BAR, RANDI RUSSELL,**
**JACOB WILLIAMS, JAMES MESSINGER and**
**JOHN DOE I (provider of Liquor to minors),**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Hinkle Law Offices, PC
Cloyd G. Hinkle
Warren Hire
Albuquerque, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellant

Sutin, Thayer & Brown

Benjamin E. Thomas
Ronald Segel
Gail Gottlieb
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Plaintiff Mary Ann Madrid appeals from the district court's order granting a motion for summary judgment.  Plaintiff argues that in response to the motion she raised a genuine issue of material fact on the question of causation.  We are not persuaded and affirm the district court's order.

**BACKGROUND**

{2}     Plaintiff was a passenger on a motorcycle driven by Quin Sanchez that crashed into a van at an intersection in Belen, New Mexico, on August 27, 2006.  The driver of the van, Jacob Williams, had failed to observe a stop sign and drove into the path of the motorcycle, which collided with the driver's side of the van, killing Sanchez and severely injuring Plaintiff. Williams pleaded no contest to vehicular homicide and great bodily injury with a motor vehicle while driving under the influence and was sentenced to six years in prison.

{3}     Plaintiff brought this action against Brinker Restaurant Corporation and employee Randi Russell (collectively, "Defendants") under the New Mexico Liquor Liability Act, which imposes civil liability on a business that sells alcohol to an intoxicated person. *See* NMSA 1978 § 41-11-1 (1986). Her complaint alleges that, in the hours before the accident, Defendants served alcohol to Sanchez to the point of intoxication while he and Plaintiff were patrons at Defendants' restaurant in Los Lunas, New Mexico. On July 15, 2009, Defendants filed their motion and supporting memorandum for summary judgment. Defendants argued that there was no genuine issue of material fact that the sole cause of the accident was the negligence of Jacob Williams. Plaintiff argued that Sanchez's blood-alcohol level, which exceeded the legal limit, affected his ability to operate his motorcycle and contributed to the accident, and that a sober driver would have been able to take evasive action. In support of her argument, Plaintiff relied primarily on the July 7, 2009 deposition testimony of her accident reconstruction expert (Expert) and paragraph number 6 of his October 26, 2008 report. Defendants countered that Expert's testimony was speculative and without foundation, and the district court granted Defendants' motion for summary judgment. On September 24, 2009, Plaintiff filed a motion for reconsideration and in support of her motion submitted Expert's entire October 26,

2

2008 report, his July 7, 2009 deposition testimony, and his September 23, 2009 affidavit. In response, Defendants filed a motion to strike attachments from Plaintiff's motion for reconsideration. The motion to strike was denied. The district court granted Plaintiff's motion for reconsideration and set aside the court's order granting Defendants' motion for summary judgment. The district court subsequently allowed Defendants to file a supplemental brief in support of Defendants' motion for summary judgment. The district court once again granted Defendants' motion for summary judgment, concluding, without explanation, that Expert's testimony "included opinions for which no foundation was provided and [which] were speculative or inadmissible on other grounds." The court also found Expert's report and affidavit to be "at times, contradictory to the deposition testimony of [Expert]." Plaintiff appeals.

**DISCUSSION**

**I.      Summary Judgment on Causation**

{4}      Plaintiff argues on appeal that Expert's opinions were sufficient to raise a reasonable inference on the question of whether Sanchez's intoxication was a contributing cause of the accident, making summary judgment improper. Defendants say Expert's opinions that a sober and experienced motorcyclist would have avoided

the collision or mitigated the injuries through various evasive maneuvers lacked foundation, were grounded in speculation, and are thereby inadmissible and fail to raise a genuine issue of material fact sufficient to defeat a motion for summary judgment.

**A. Standard of Review**

{5} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551 (internal quotation marks and citation omitted). "We resolve all reasonable inferences in favor of the party opposing summary judgment, and we view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits." *Weise v. Washington Tru Solutions, L.L.C.*, 2008-NMCA-121, ¶ 2, 144 N.M. 867, 192 P.3d 1244. "Once the movant makes a prima facie case for summary judgment, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "[T]he party opposing summary judgment has the burden to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 10,

4

146 N.M. 179, 207 P.3d 1156 (internal quotation marks and citation omitted). "We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application[.]" *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). We review an order granting summary judgment de novo. *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798.

{6}     We now turn to the question of whether Plaintiff raised a genuine issue of material fact regarding a causative link between Sanchez's intoxication and the collision between the motorcycle and the van.

**B.     Summary Judgment Was Appropriate**

{7}     Defendants established a prima facie case for summary judgment by arguing that the negligence of the van's driver constituted the sole cause of the injuries to Plaintiff because no motorcycle driver, whether intoxicated or not, could have avoided the collision under the circumstances. Defendants contend that Expert's own testimony during his deposition supports the view that even a sober motorcyclist would not have had sufficient time to be able to avoid the collision. Defendants point out that Expert testified that, even if the motorcycle driver had been sober, "[i]f the only thing Sanchez did was lock up his brakes, the impact would have occurred"

5

anyway, suggesting that the crash was unavoidable under any circumstances. Plaintiff responded by submitting further testimony from Expert's deposition, his written report, and his affidavit to rebut Defendants' contention. Defendants then argued that Expert's affidavit added an additional layer of speculation to the inadmissible deposition testimony.

**{8}** The New Mexico Liquor Liability Act provides: "No person may seek relief in a civil claim against a licensee . . . for injury or death . . . which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section." Section 41-11-1(H). "Proximate cause is a necessary, factual element of [a p]laintiff's negligence claims against [a d]efendant[]." *Padilla v. Intel Corp.*, 1998-NMCA-125, ¶ 8, 125 N.M. 698, 964 P.2d 862. "Where reasonable minds may differ on the question of proximate cause, the matter is to be determined by the fact finder. Where the facts are not in dispute and the reasonable inferences from those facts are plain and consistent, proximate cause becomes an issue of law." *Galvan v. City of Albuquerque*, 85 N.M. 42, 45, 508 P.2d 1339, 1342 (Ct. App. 1973) (citation omitted).

**{9}** In responding to a motion for summary judgment, the non-moving party "must adduce evidence to justify a trial on the issues." *Romero v. Philip Morris Inc.*, 2010-

6

NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). "Such evidence adduced must result in reasonable inferences." *Id.* A reasonable inference is "a process of reasoning whereby, from facts admitted or established by the evidence, or from common knowledge or experience, a reasonable conclusion may be drawn that a further fact is established." *Stambaugh v. Hayes*, 44 N.M. 443, 451, 103 P.2d 640, 645 (1940). "An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." *Id.* (citation omitted).

{10} Defendants do not object to Expert's qualifications, but they contend that Expert's opinions lacked foundation and were speculative. As a result, Defendants argue that his opinions fall short of meeting the standards set by Rule 11-702 NMRA, which requires that an expert put forth testimony that "will help the trier of fact to understand the evidence or to determine a fact in issue." *See State v. Downey*, 2008-NMSC-061, ¶ 30, 145 N.M. 232, 195 P.3d 1244 (stating that "expert testimony is inadmissible under Rule 11-702 unless it will assist the trier of fact"). Because such a standard "goes primarily to relevance[,]" a court must look at "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (internal quotation marks and citations

7

omitted). "[W]e step into the shoes of the district court, reviewing the motion, the supporting papers, and the non-movant's response as if we were ruling on the motion in the first instance." *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204.

**{11}** Expert testified that Sanchez's intoxication contributed to the accident. Expert claimed that, if Sanchez had been an experienced motorcyclist and sober, Sanchez would have had the opportunity to take advantage of various evasive maneuvers that would either have avoided the accident or at the least lessened the injuries to Plaintiff. This opinion began with the October 26, 2008 report, and eventually progressed and expanded with his July 7, 2009 deposition, and concluded with his September 23, 2009 affidavit.

**{12}** Our task is to consider whether Expert's opinions were sufficient to raise a general fact question concerning the causation of Plaintiff's injuries. It is the district court's duty to make sure that "an expert's testimony rests on both a reliable foundation and is relevant to the task at hand so that speculative and unfounded opinions do not reach the jury." *Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 12, 149 N.M. 140, 245 P.3d 585, *cert. granted*, 2010-NMCERT-012, 150 N.M. 493, 263 P.3d 270.

{13} We have previously stated:

> In determining whether an affidavit is sufficient to preclude a summary judgment, certain factors must be considered. A satisfactory explanation of how the expert arrived at his opinion must be given, or the opinion is not competent evidence. An affidavit in a summary judgment must set forth facts admissible in evidence.

*Pedigo v. Valley Mobile Homes, Inc.*, 97 N.M. 795, 798, 643 P.2d 1247, 1250 (Ct. App. 1982). Affidavits submitted in opposition to a motion for summary judgment "shall set forth such facts as would be admissible in evidence." Rule 1-056(E) NMRA. *See Trujillo v. Treat*, 107 N.M. 58, 61, 752 P.2d 250, 253 (Ct. App. 1988) ("In a summary judgment proceeding, an affidavit of an expert must explain how he arrived at his opinion, setting forth such supportive facts as would be properly admissible in evidence."). "Expert testimony may be received if, and only if, the expert possesses such facts as would enable him to express a reasonably accurate conclusion as distinguished from mere conjecture." *Downey*, 2008-NMSC-061, ¶ 32 (internal quotation marks and citation omitted). While an expert may not base testimony on mere speculation, an expert may put forth reasonable inferences based on evidence. *See id*. ¶ 34. ("Experts may, and often do, base their opinions upon factual assumptions, but those assumptions in turn must find evidentiary foundation in the record."); *Zia Trust, Inc. v. Aragon*, 2011-NMCA-076, ¶ 19, 150 N.M. 354,

9

258 P.3d 1146 ("To be sure, an expert witness may make assumptions based on evidence in the record to reach a conclusion that may be presented to a jury.").

**1.    Report**

{14}    The purpose of Expert's report dated October 26, 2008 was to provide an accident reconstruction analysis of the accident, determine the cause of the crash, and assess the effect, if any, of alcohol consumption by either driver.  Expert reported that the level of intoxication for both Williams and Sanchez were evident primary factors in the accident.  He further stated that "Sanchez would have had decreased perception and reaction time also.  He may have been able to stop his motorcycle but his level of intoxication did not allow for him to correctly and quickly perceive the Ford van as a hazard."

{15}    The New Mexico Rules of Evidence provide ways to test the basis of an expert's opinion.  Rule 11-703 NMRA governs the basis for an expert's opinion: "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Rule 11-705 NMRA provides: "Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data.  But the expert may be required to disclose those facts or

10

data on cross-examination." As a basis for this report opinion, Expert reviewed various reports, diagrams, narratives, and photographs; visited the accident scene and inspected the area a little over two years after the accident; took measurements of the intersection; noted the layout and conditions of the traveling lanes; and determined visibility from all directions of the intersection. He also determined the posted speeds for both roads at the intersection.

{16} We were unable to find anything in the record to indicate that the intersection was in substantially the same condition on September 26, 2008 as it was on August 27, 2006. This is particularly important because as a basis for his opinions, Expert found that the area was well lit, with numerous poles providing ample light during the hours of darkness. We could not find anything in the record to show these lights either existed in August 2006 or are substantially similar to the lighting conditions and number of poles that existed in August 2006. Expert also observed that the trees located to the east of the intersection did not obstruct the view for either direction approaching the highway portion of the intersection. He further stated that the trees might not have existed at the time of the accident, without any source of support for the assumption.

{17}     Expert discussed average reaction and perception time for an unexpected event such as a crash without explaining how he got to the specific time frames. He further stated that "[a]lcohol is a central nervous system depressant" without identifying the source or basis of this statement. Expert also relied on studies that have shown that as a person's blood-alcohol concentration increases the ability to successfully complete tasks decreases. These studies are not identified, and Expert does not state whether these are the types of studies reasonably relied upon by experts in his field of accident reconstruction as required under Rule 11-703. These deficiencies in testimony eliminate the foundation for Expert's opinions that Sanchez would have had decreased perception and reaction time and consequently did not adequately perceive the van as a hazard in time to stop his motorcycle. Absent foundation, Expert's extensive statements as to the effect alcohol might have on people in general is mostly irrelevant, as Expert never stated how, or even that, these supposed generally applicable effects were operating on Sanchez at the time of the accident. Expert asserted no qualification to use the general information he provided to render a competent opinion as to the specific effects of alcohol on either driver. The district court properly rejected Expert's assertions based on his statement as unfounded and speculative.

12

## 2. Deposition Testimony

{18}     Defendants contend that Expert's deposition testimony supported their theory that Williams was the sole cause of the accident.  This Court has considered only the portions of Expert's deposition testimony submitted by both parties in support of their respective motions below.  Expert determined the motorcycle's speed using an accident reconstruction program.  There was no discussion about the program in particular or about how Expert's speed determinations were generated in a way that was scientifically valid.  *State v. Tollardo*, 2003-NMCA-122, ¶ 14, 134 N.M. 430, 77 P.3d 1023.  Such a discussion would have triggered the validity and reliability requirements of *State v. Alberico*, 116 N.M. 156, 165, 861 P.2d 192, 200-01 (1993), for admission of the speed determinations.  *Id*.

{19}     Expert testified that five evasive maneuvers were available to Sanchez to either avoid the accident or to lessen Plaintiff's injuries.  Those options included slowing the motorcycle down and taking a right turn, laying the motorcycle down, or veering into the oncoming lane.  There was no evidence of the traffic conditions at the time of the collision, other than from the first responding Sheriff's deputy, who testified that he was at the scene of the accident within one minute of it happening.  By the time the deputy got to the scene, there were "five or six, seven" people who had come upon the

13

accident. The highway was a fairly well traveled road in the area. The type of traffic on the road at the time of the accident is necessary to determine whether these evasive maneuvers were available to Sanchez. Without such evidence, Expert's opinion of the evasive maneuvers available to Sanchez lacks foundation. Expert also premised these opinions on the actions of a sober and experienced driver and he assumed, without putting forth evidence, that Sanchez was an experienced motorcyclist.

{20} Expert identified his sources for his reaction times as Internet research, publications from the National Highway Transportation Safety Board, the Colorado Department of Health, and his own training and experience from classes he attended over the past thirty years. No evidence was found in the record to indicate that these sources are the type reasonably relied upon by an expert in the area of accident reconstruction.

{21} Expert further opined that "[he] believe[d] that the effect of the alcohol on Sanchez did not allow him the ability to observe and perceive hazards around him or to react to those hazards." Expert's training on the effects of alcohol on a person's cognitive processes were through the Colorado Division of Highway Safety via DWI training, and he has taught DWI enforcement and observation/detection at law enforcement academies in Colorado. Expert did not know the difference in ratio

14

between the vitreous-humor alcohol level and the blood-alcohol level. A coroner in the El Paso County Coroner's Office advised him that the vitreous-humor alcohol level is more accurate than a blood-alcohol level. Expert's opinion is based on his training and his teachings as applied to Sanchez's level of intoxication. There is nothing in the record to set forth the details of his training or his teaching curriculum to provide a sufficient foundation for the opinion. Expert relies on another person's statements regarding the vitreous-humor alcohol level and the blood-alcohol level, but there is nothing in the record to support what this other person told him. Without a showing that experts in the area of accident reconstruction, primarily motorcycle accident reconstruction, would reasonably rely on this kind of fact in forming an opinion on the subject, the district court may properly disregard Expert's opinion in this regard. *See* Rule 11-703.

{22} Expert failed to correlate the condition of the motorcycle at the time of his 2008 examination with its condition in 2006 following the accident. Similarly, as noted above, he did not visit the scene at night until after he had written his report that opined as to the conditions of the scene at the time of the accident. The district court could fairly conclude that Expert did not possess the requisite background to give an opinion that would be valid, reliable, and relevant to the task at hand, *Parkhill v.*

15

*Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 12, 149 N.M. 140, 245 P.3d 585.

## 3. Affidavit

**{23}** Despite Expert asserting in his affidavit that he was prepared to testify as an expert in accident reconstruction and investigation, especially motorcycle accident reconstruction, Expert persisted in offering statements without any grounding facts relevant to the case. No facts were offered for Expert's conclusion that Sanchez tried to veer left just before impact, nor did Deputy Martinez's testimony support Expert's conclusion that Sanchez had not been scanning for potential hazards. We were unable to find any such supportive testimony or evidence to show how Sanchez was or was not operating the motorcycle immediately before the collision.

**{24}** Expert's opinions are based on a sober and experienced motorcyclist scanning for hazards as he approaches the intersection, recognizing that the van driver might not stop at the stop sign, and thus perceiving the van as a potential danger. He concludes that a sober and experienced motorcyclist could have appreciated the potential hazards and taken evasive or defensive actions, thereby reducing the risks of serious or fatal injuries to Sanchez and Plaintiff. However, there is no testimony or evidence to show that Sanchez was an experienced driver. Expert assumes Sanchez

16

was an experienced motorcyclist because he had owned and operated a motorcycle for a number of years, had a motorcycle endorsement on his driver's license, and had taken a safety training class to obtain the endorsement. There is nothing in the record to support how long Sanchez had been driving a motorcycle, whether a safety training class was required to obtain the driver's endorsement, or whether he was otherwise experienced with operating a motorcycle.

{25}    Expert's ultimate opinion that alcohol played a significant role in this tragic accident is significantly undermined by speculation and a lack of foundation. "[E]xperts must satisfactorily explain the steps followed in reaching a conclusion" and "without such an explanation the opinion is not competent evidence." *Four Hills Country Club v. Bernalillo Cnty. Prop. Tax Protest Bd.*, 94 N.M. 709, 714, 616 P.2d 422, 427 (Ct. App. 1979). The law in New Mexico is clear that the testimony of an expert is not incompetent and impermissibly speculative as lacking a factual basis where the expert gives a satisfactory explanation as to how he arrived at his opinion. *See Gonzales v. Gen. Motors Corp.*, 89 N.M. 474, 477, 553 P.2d 1281, 1284 (Ct. App. 1976). Expert has not satisfactorily explained the steps he followed in establishing the basis for opinions, nor provided a satisfactory explanation in reaching his ultimate conclusion.

17

**{26}** Four recent cases provide guidance on the question of whether an expert's testimony crosses the line into speculation and makes summary judgment proper. In *Zia Trust*, 2011-NMCA-076, ¶ 12, we upheld a grant of summary judgment where the district court had found expert testimony to be speculative and unreliable after a physician testified on behalf of a plaintiff about whether prompt medical attention could have provided an increased chance of survival for the victim. However, no internal autopsy had been performed, and the expert "needed to assume certain medical information to reach his opinion" and "made assumptions in his scenario that resulted in a twenty-eight percent chance of survival." *Id.* ¶ 16. We concluded that the expert "did his best to quantify the possibility of [the d]ecedent's survival based in part on known facts established in the investigation of the accident," but "his opinion was necessarily based on information that was not available" and, as a result, the expert "opined about [the d]ecedent's chance of survival without specific knowledge as to the cause of [the d]ecedent's death or the conditions that led to his death." *Id.* ¶ 18. "His assumptions, therefore, form[ed] a substantial part of the foundation for his opinion." *Id.* ¶ 22.

**{27}** Similarly, in *Downey*, our Supreme Court held that an expert's opinion concerning retrograde extrapolation of a blood-alcohol level was inadmissible and

went beyond the facts of the case because the expert was required to make the assumption that the defendant had consumed his last drink prior to a collision. 2008-NMSC-061, ¶ 33. The missing information was "critical" to perform the calculations at the heart of the issue. *Id.* ¶ 32. "Given that [the expert] did not have the facts necessary to plot [the d]efendant's placement on the [blood-alcohol content] curve, he could not express a reasonably accurate conclusion regarding the fact in issue: whether [the d]efendant was under the influence of intoxicating liquor at the time of the collision." *Id.* ¶ 33. The Court concluded that the missing evidence "rendered [the expert's] assumption mere guesswork in the context of this particular case." *Id.* ¶ 34.

**{28}** By contrast, in *State v. Hughey*, 2007-NMSC-036, ¶ 10, 142 N.M. 83, 163 P.3d 470, our Supreme Court found the exclusion of testimony to be improper in another case in which the question was whether sufficient facts were known in order to accurately apply retrograde extrapolation. In *Hughey*, the State's expert, "[w]orking from [an] assumption" about when the defendant had stopped drinking, testified about the generally accepted time to reach a peak alcohol level, drawing a reasonable inference from the defendant's statements to police. *Id.* ¶ 15. While acknowledging that the expert testimony "was somewhat vague," the Court stated that "it [was] arguable that a proper inference that may be drawn from the testimony of the State's

expert is that [the d]efendant's [blood-alcohol content] was higher than .08 at the time of the accident." *Id.* ¶ 14. The Supreme Court concluded: "While we do not presume to make an assessment as to whether this constitutes sufficient evidence to support a [verdict] . . . , we believe that the testimony of the State's expert raises a question of fact that should be resolved by a jury rather than by the trial court prior to trial." *Id.* ¶ 15.

{29} Similarly, in *Pollock v. State Highway and Transportation Department*, 1999-NMCA-083, ¶ 18, 127 N.M. 521, 984 P.2d 768, we concluded that a plaintiff had put forth sufficient evidence to create a genuine issue of material fact on proximate cause by providing expert testimony about whether the absence of warning signs along the highway contributed to a crash in which the plaintiff drove in the wrong direction. In *Pollock*, the expert drew reasonable inferences from a police report, "obtained personal knowledge of the accident site by visiting it[,]" and "formed his opinion from a diagram in a police report." *Id.* ¶¶ 18-19. Thus, summary judgment was improper. *Id.* ¶ 20.

{30} In the case before us, Expert's opinion was "based on information that was not available." *Zia*, 2011-NMCA-076 ¶ 18. Expert did not know what the traffic conditions were at the time of the collision and he did not have information available

to show the extent of Sanchez's motorcycle driving experience. Expert's opinion was sometimes based on "mere guesswork." *Downey*, 2008-NMSC-061, ¶ 34. He assumed that Sanchez was an experienced motorcyclist; he assumed that the traffic conditions were such that Sanchez had several evasive maneuvers available to him; and he assumed how Sanchez was operating the motorcycle immediately before the collision. Expert could not draw such reasonable inferences from the evidence in the record to support his opinions, including his ultimate opinion. Expert's opinions did not survive scrutiny under Rule 11-702, because they were "so vague and general as to provide no real assistance to the trier of fact." *Hughey*, 2007-NMSC-036, ¶ 17 (internal quotation marks and citation omitted).

**{31}** We conclude that Expert's opinions were incomplete, not based on facts in the record, and his ultimate opinion on any causative link between Sanchez's intoxication and the collision between the motorcycle and the van would be misleading rather than helpful to the fact-finder.

**C.      Contradiction of Affidavit and Deposition Testimony**

**{32}** Finally, the district court included in its Order that the Expert's affidavit or report contradicted his deposition testimony. The district court gave no examples to support its finding that Expert's opinions in the affidavit or report "were, at times, contradictory to the deposition testimony of [Expert.]." And Defendants at no point in their brief direct us to contradictions between the deposition and affidavit of Expert; instead they limit their argument to the contention that Expert's assertions in his affidavit were speculative, irrelevant, without foundation, and created unreasonable inferences.

**{33}** Our inquiry here goes toward the admissibility of the evidence and does not involve an assessment of Expert's testimony or his credibility. *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 22, 135 N.M. 539, 91 P.3d 58 ("A court reviewing a summary judgment motion may not weigh the evidence or pass on the credibility of the witnesses."). To the extent that Expert's opinions contained within his affidavit, his deposition, or his written report conflicted, it would have been for the fact-finder to resolve that conflict. *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 23, 139 N.M. 12, 127 P.3d 548 ("Judges should not make credibility determinations . . . at the summary judgment stage.").

**CONCLUSION**

**{34}** For the foregoing reasons, we affirm the order of summary judgment in favor of Defendants. Because we are not remanding for further proceedings, we need not address Plaintiff's request for reassignment of the case on remand.

**{35}** **IT IS SO ORDERED.**


_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**JAMES J. WECHSLER, Judge**