This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

> **v.** No. 34,905

**DAVID BROWN,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

{1} Defendant appeals his conviction for criminal sexual penetration in the third degree. [MIO 1; RP v.3/600] This Court issued a notice of proposed summary disposition, proposing to affirm. In response, Defendant has filed a memorandum in opposition, which we have duly considered. Unpersuaded, we affirm.

{2} First, we address Defendant's motion to amend the docketing statement to add the issue that his due process rights have been violated by this Court's "placing his appeal on the summary calendar on the basis of an insufficient docketing statement." [MIO 3-4] Defendant argues that in the absence of a full transcript, and where the docketing statement does not fully set forth the relevant facts, if the Court desires additional information, the case should be placed on the general calendar so that Defendant may have access to the transcript. [MIO 4] Defendant further argues that the presumption of correctness should not be applied. [MIO 4] In support of his contention, Defendant relies on *State v. Ibarra*, 1993-NMCA-040, ¶¶ 9, 11, 116 N.M. 486, 864 P.2d 302, for the proposition that the "summary calendar provides a 'record of sufficient completeness' to permit consideration of [an] indigent defendant's claims on appeal consistent with due process if the Court can obtain sufficient information about the facts from the record proper, the docketing statement, and the memoranda." [MIO 4 (emphasis omitted)]

{3} We are unpersuaded that Defendant's due process rights have been violated by

2

our assignment of this case to the summary calendar. Based on the facts contained in the docketing statement and three volumes of record proper, which contained tape log notes of the trial that this Court reviewed, we determined that there was sufficient information to evaluate the merits of the case on the summary calendar. *See Ibarra*, 1993-NMCA-040, ¶ 11 (noting that assignment of the case to the summary calendar is a matter within this Court's discretion because "[i]f the calendar judge believes the facts contained in the docketing statement are sufficient to enable the Court to review the issues raised, the case is assigned to the summary calendar, with a proposed disposition set out").

{4}     To the extent Defendant argues that any application of the presumption of correctness on the summary calendar constitutes a violation of his due process rights and runs contrary to our holding in *Ibarra*, [MIO 4-5] we disagree. Defendant has not pointed us to any authority for the proposition that application of the presumption of correctness on the summary calendar constitutes a violation of an indigent defendant's due process rights, and we are unaware of any. *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Because the issue Defendant seeks to add is not viable, we deny his motion to amend. *See State v. Sommer*, 1994-NMCA-070, ¶ 11, 118 N.M. 58, 878 P.2d 1007 (denying a motion to amend the

docketing statement based upon a determination that the argument sought to be raised was not viable).

{5}     Second, we address Defendant's motion to amend the docketing statement to add the issue of ineffective assistance of counsel. [MIO 5] In support of his contention, Defendant argues that his trial counsel's failure to file a more thorough docketing statement, and one that complies with the rules of appellate procedure, constitutes per se ineffective assistance of counsel. [MIO 5] We disagree. In support of his contention, Defendant cites to *State v. Leon*, 2013-NMCA-011, ¶ 14, 292 P.3d 493, for the proposition that the failure to file a timely notice of appeal constitutes per se ineffective assistance of counsel. [MIO 5] We do not find the present circumstances to be analogous to the failure to file a timely notice of appeal, and Defendant points us to no authority suggesting otherwise. *See Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

{6}     We additionally note that Defendant has not argued that even if trial counsel had filed a sufficient docketing statement, the result of this proceeding would have been different. *See State v. Aker*, 2005-NMCA-034, ¶ 34, 137 N.M. 561, 113 P.3d 384 (noting that the second part of the two-prong test to show a prima facie case of ineffective assistance of counsel involves making a showing of prejudice such that

4

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (internal quotation marks and citation omitted)). In the instant case, this Court has evaluated the merits of the alleged claims of error raised by Defendant by undertaking a detailed review of the docketing statement, record proper and tape log notes contained therein, and memorandum in opposition. We do not see, and Defendant has not argued, how he has been prejudiced by his trial attorney's failure to file a more detailed docketing statement. For this reason, because the issue Defendant seeks to add is not viable, we deny his motion to amend. *See Sommer*, 1994-NMCA-070, ¶ 11(denying a motion to amend the docketing statement based upon a determination that the argument sought to be raised was not viable).

{7}     We turn next to Defendant's single remaining issue on appeal: that the district court's exclusion of any reference to Victim's bipolar diagnosis prevented him from presenting his defense. [MIO 6; CN 4] Relevant to this, Defendant continues to advance three sub-arguments: first, that the district court erred by excluding the testimony of Dr. Roll, a defense expert; [MIO 7] second, that the district court improperly limited Defendant's testimony by precluding Defendant from testifying about Victim's bipolar disorder; [MIO 9] and third, that the district court improperly restricted Defendant's cross-examination of Victim by precluding Defendant from

5

questioning Victim about her bipolar diagnosis.

{8} Our notice proposed to conclude that the district court's exclusion of any reference to Victim's bipolar status did not constitute an abuse of discretion. [CN 5] Our notice observed that Victim was diagnosed as being bipolar when she was thirteen years old, was given a medication which she took for six months, and has not since seen a mental health professional for this condition. [RP v.1/215; CN 5] The incident in question occurred when Victim was eighteen or nineteen years of age. [RP v.1/215; CN 5; MIO 6] As such, the State argued below that Victim's diagnosis as a child was not relevant to bring up at trial because Victim had not been taking medication for the condition, had not been re-diagnosed more recently, and did not show symptoms of being bipolar. [RP v.1/216; CN 5] The State further argued that even if the information was relevant, Defendant had not established how this would impact Victim's credibility, and it was still more prejudicial than probative under Rule 11-403 NMRA. [RP v.1/216; CN 5]

{9} In his memorandum in opposition, Defendant continues to argue that Victim's bipolar diagnosis as a minor was relevant because Victim had testified pretrial that on the night of the incident in question, Victim had been given a new medication by a pharmacist and was told that she would need to be observed until its effects were known. [MIO 6] Defendant told police this when he was initially questioned as an

6

explanation as to why Victim was staying at Defendant's residence. [MIO 6] Defendant argues that without the information that Victim was bipolar, the jury was unable to weigh the Victim's credibility in light of her mental health diagnosis and new medication, and the jury lacked context as to why Victim was staying at Defendant's home. [MIO 6] Defendant therefore continues to contend that he was unable to present his defense that Victim's testimony was not credible as a result of her mental health diagnosis and new medication. [MIO 7]

{10}   We turn first to the limitation on Defendant's testimony from mentioning Victim's bipolar diagnosis. [MIO 9] Defendant argues in his memorandum in opposition that the district court "prohibited [Defendant] from testifying about his knowledge of [Victim's] [bipolar] disorder (and by extension her medication status) [, which] would have left him unable to testify truthfully in his own defense and thus he chose not to testify." [MIO 9] We remain unpersuaded. The tape log notes of the jury trial reflect that Victim's testimony explained the context of Victim's staying at Defendant's residence on the night in question—specifically, that Victim had been diagnosed with a seizure disorder and was taking a new seizure medication prescribed to her by a neurologist, and the pharmacist suggested that someone watch her to see how she would react to it. [RP v.3/508–09] As such, the jury was able to hear that Victim had a seizure disorder, had started a new medication for this condition, and

7

needed monitoring to see how the medication would affect her. [RP v.3/508–09] Accordingly, Defendant was able to argue that Victim was at his home because she took this medication, and that Victim's seizure medication impacted her memory of the night in question. [CN 7] Defendant has not explained, and we do not see, how the exclusion of Victim's childhood bipolar diagnosis would impact his ability to present his defense. To the extent Defendant appears to argue that the medication Victim was taking on the night in question was medication for her bipolar condition, [MIO 9] there is no evidence supporting that contention. The uncontroverted evidence was that the medication was for Victim's seizure disorder, and that information was presented to the jury. [RP v.3/508–09]

With respect to Defendant's argument that any exclusion of Victim's bipolar diagnosis prevented him from cross-examining Victim about "inconsistencies between her pre-trial testimony and her claimed lack of memory on the stand[,]" [MIO 10] we disagree. Again, Victim testified about her seizure medication, as well as her reason for staying at Defendant's residence, and Defendant has not argued that the district court precluded him from cross-examining Victim about these topics. Again, we do not see, and Defendant does not explain, how the inability to mention Victim's bipolar diagnosis precluded him from effectively cross-examining Victim, particularly in light of the other medical information Defendant could have discussed. To the extent

8

Defendant argues that this case should be placed on the general calendar to enable a review of the entire record to determine whether this limitation resulted in fundamental unfairness, we decline to do so. *See Ibarra*, 1993-NMCA-040, ¶ 9 (explaining that "an appellate court [is] free to determine the nature and extent of the trial record necessary to fully review the issues raised in each case and require a transcript in only those cases where it would advance appellate resolution of the issues raised").

{11}     Finally, we turn to Defendant's argument regarding the exclusion of testimony by Dr. Roll, a defense expert. [MIO 7] Our notice observed that Dr. Roll never saw or examined Victim personally, and the district court noted that Dr. Roll made general comments about bipolar disorder, but was unable to say anything specific about Victim. [RP v.2/293, 297; CN 5] The district court further noted that there are three phases of bipolar disorder, and Dr. Roll did not know what phase Victim was in. [RP v.2/297] The district court ultimately concluded that Victim's diagnosis at the age of thirteen was "too remote," and the information about Victim's bipolar diagnosis was "too speculative to let the jury hear anything about it." [RP v.2/297–98; CN 6] Our notice proposed to conclude that there was no abuse of discretion in the district court's ruling because such a tenuous mention of a serious mental health condition had no bearing on Victim's credibility. [CN 6] *See Zia Trust, Inc. v. Aragon*,

2011-NMCA-076, ¶ 14, 150 N.M. 354, 258 P.3d 1146 ("An abuse of discretion requires this Court to conclude that the district court's ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case."(internal quotation marks and citation omitted)).

{12} In his memorandum in opposition, Defendant continues to argue that Dr. Roll's expert testimony was improperly excluded because it "would provide the jury with an understanding of why a [bipolar] person may have made an incorrect allegation and why their memory might be affected." [MIO 8-9] Defendant argues that because Victim discussed the diagnosis herself pretrial, "the [district] court had no basis in denying an unrebutted medical diagnosis." [MIO 9] We remain unpersuaded. Simply because Victim stated at some point pretrial that she had been diagnosed with bipolar disorder at the age of thirteen does not mean that it was relevant information to present to the jury. Rule 11-401 NMRA provides that relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence; *see Zia Trust, Inc.*, 2011-NMCA-076, ¶ 14 (stating that "the district court has the duty to make sure that an expert's testimony rests on both a reliable foundation and is relevant to the task at hand so that speculative and unfounded opinions do not reach the jury" (internal quotation marks and citation omitted)).

{13}   For the reasons stated above and set forth in our notice of proposed summary disposition, we affirm.

{14}   **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**