The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: June 16, 2025

**No. A-1-CA-40460**

**JENNIFER THOMPSON, Personal Representative of the ESTATE OF GEORGE THOMPSON; and JERRY POTTS, JR., Personal Representative of the ESTATE OF JUDY THOMPSON,**

  Plaintiffs-Appellants,

v.

**KATHLEEN LOPEZ, M.D.; BRIAN MUMFORD, M.D.,**

  Defendants-Appellees,

and

**PRESBYTERIAN HEALTHCARE SERVICES, INC. d/b/a PRESBYTERIAN HOSPITAL; PRESBYTERIAN MEDICAL GROUP; CYNTHIA VALDEZ, M.D.; JEFFREY P. ROSS, M.D.; and EDWARD MCKENZIE, M.D.,**

  Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Court Judge**

Curtis & Co.
Lisa K. Curtis
Andre K. Archuleta
Luke W. Holmen
Albuquerque, NM
Law Office of Jamison Barkley, LLC
Jamison Barkley
Santa Fe, NM

for Appellants

Atwood, Malone, Turner & Sabin, P.A.
Carla Neusch Williams
Roswell, NM

for Appellee Brian Mumford, M.D.

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Holly Armstrong
Albuquerque, NM

for Appellee Kathleen Lopez, M.D.

**OPINION**

**ATTREP, Judge.**

{1}     Plaintiffs appeal the judgment entered in favor of defendant radiologists after a jury trial on their claims of medical negligence. Prior to trial, Plaintiffs dismissed their claims against certain defendants. Now, on appeal, Plaintiffs raise claims of error about dismissed and nonparty doctors. Specifically, Plaintiffs argue that the district court (1) caused the jury to be confused when it denied Plaintiffs' request to interlineate the case caption to remove defendants who were dismissed prior to trial, and then abused its discretion by instructing the jury, pursuant to *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, 122 N.M. 543, 928 P.2d 269, about Plaintiffs' resolution of their claims against these defendants to alleviate the confusion; and (2) erred by instructing the jury on the comparative negligence of certain dismissed and nonparty doctors. As for Plaintiffs' first claim of error, we conclude that Plaintiffs have failed to establish the district court abused its discretion. Any jury confusion about the dismissed defendants could not have been avoided by the interlineation of the case caption because the defendant radiologists raised an affirmative defense of comparative negligence as to some of the dismissed defendant doctors, and we are not persuaded the district court erred by instructing the jury pursuant to *Fahrbach*. As for Plaintiffs' second claim of error, we conclude any error in instructing the jury on comparative negligence was harmless because

the jury, in finding defendant radiologists not negligent, never reached the issue of the comparative fault of the dismissed and nonparty doctors; prejudice is not presumed under the circumstances of this case; and Plaintiffs have not otherwise established they were prejudiced by the comparative negligence instructions. Plaintiffs additionally claim on appeal that the district court erred in admitting certain expert testimony. We conclude that any error in this regard was harmless. We accordingly affirm.

**BACKGROUND**

{2}　　Mr. George Thompson died from sepsis as the result of a perforation of his large bowel, after a two-week-long stay at Presbyterian Hospital. Plaintiffs, the Estate of George Thompson and Judy Thompson[1] (Mr. Thompson's wife), sued Presbyterian Healthcare Services, Inc. d/b/a Presbyterian Hospital; Presbyterian Medical Group; and Drs. Kathleen Lopez (radiologist), Brian Mumford (radiologist), Cynthia Valdez (hospitalist), Edward McKenzie (hospitalist), and Jeffrey Ross (infectious disease specialist) for medical negligence based on the care Mr. Thompson received at Presbyterian Hospital. Prior to trial, Plaintiffs settled their claims against Presbyterian Healthcare Services, Inc. d/b/a Presbyterian Hospital,

---

[1] Judy Thompson died before trial, resulting in the substitution of a new personal representative for George Thompson's estate and the substitution of the Estate of Judy Thompson for Judy Thompson.

Presbyterian Medical Group, and Drs. Valdez and McKenzie; and the complaint was dismissed with prejudice as to these defendants, as well as Dr. Ross.

{3}     Plaintiffs sought to prove that the remaining defendant doctors, Drs. Lopez and Mumford (collectively, Defendants), the two radiologists, were negligent in their review and interpretation of CT scans. In the pretrial order, Defendants denied they were negligent and argued that Drs. Valdez and McKenzie, the two hospitalists against whom Plaintiffs settled, breached the standard of care, raising comparative fault as a defense. At trial, Defendants maintained that they were not negligent and that Drs. Valdez and McKenzie, as well as Dr. David Stryker, an infectious disease specialist who was never named as a defendant in this case, breached the standard of care and that this was the proximate cause of Mr. Thompson's death. The jury was instructed consistently with Defendants' denial of negligence and affirmative defense of comparative fault. The jury found that neither Defendant Lopez nor Defendant Mumford were negligent, and accordingly did not allocate any fault to Drs. Valdez, McKenzie, or Stryker. After post-trial motions, Plaintiffs appealed the judgment entered in Defendants' favor. We reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

{4}     Plaintiffs argue that the district court: (1) abused its discretion by denying their request to interlineate the case caption to remove the dismissed defendants and

then by informing the jury, pursuant to *Fahrbach*, about Plaintiffs' resolution of their claims against these defendants; (2) erred by instructing the jury on the comparative negligence of Drs. Valdez, McKenzie, and Stryker; and (3) abused its discretion by allowing Defendant Mumford to testify based on his specialized medical knowledge and training without qualifying him as an expert witness, contrary to Rules 11-701 and 11-702 NMRA, and, in light of this error, abused its discretion by then admitting cumulative expert testimony, contrary to Rule 11-403 NMRA. We discuss these issues in turn.

## I.      Interlineation and the *Fahrbach* Instruction

{5}      Prior to trial, Plaintiffs moved to interlineate the case caption to remove the names of the defendants who previously were dismissed, and moved in limine, under Rule 11-408 NMRA, to bar evidence of the settlements with the dismissed defendants. Defendants opposed the motions, noting that the jury would hear about the dismissed defendants because of Defendants' comparative fault defense, and that a *Fahrbach* instruction would reduce any jury confusion without prejudicing Plaintiffs. The district court denied Plaintiffs' motion to interlineate, noting that "Plaintiffs have not cited to any case law or rule that directs the [c]ourt to 'interlineate' a caption when parties to a case have settled." The district court subsequently denied Plaintiffs' motion in limine, determining that "[t]he potential for juror speculation and confusion in this case is great as it relates to the settlement

and dismissal of other parties."[2] The district court concluded that this potential confusion could be addressed by instructing the jury, pursuant to *Fahrbach*, that "a settlement took place and that the jury is not to speculate upon the reasons for, or content of, the settlement agreements." The court gave the parties the opportunity to submit proposed *Fahrbach* instructions.

{6}     The district court selected Defendants' proposed *Fahrbach* instruction, but initially agreed, at Plaintiffs' request, not to read the instruction to the jury until the end of the trial. The *Fahrbach* instruction ended up being read to the jury on the third day of trial, however, after the jury submitted a note asking the district court to "explain if/how we will hear from the other defendants listed in this case other than [Drs.] Mumford and Lopez[; and w]hy are we only considering the two of them." The full instruction given to the jury follows.

> The only defendants at trial are Dr. Brian Mumford and Dr. Kathleen Lopez. In addition to Dr. Mumford and Dr. Lopez, plaintiff also sued Dr. Cynthia Valdez, Dr. Edward McKenzie, Dr. Jeffrey Ross, and Presbyterian Health Services. Plaintiff resolved her claims against Dr. Valdez, Dr. McKenzie, Dr. Ross, and Presbyterian Health Services. You are not to speculate upon the reason for, or content of, such resolution.

---

[2]The district court additionally explained that "the fact that some defendants are no longer in the case because of settlement could be relevant and is allowed to show a witness's bias or prejudice under Rule 11-408(B)." *See* Rule 11-408 (providing that evidence of a settlement is not admissible "either to prove or disprove the validity or amount of a disputed claim," but such evidence may be admitted "for another purpose, such as proving a witness's bias or prejudice").

{7}     In *Fahrbach*, our Supreme Court held that a district court "may inform the jury of the fact of settlement if the court has reason to believe (a) that it should do so in order to assist the jurors in understanding their responsibilities, and (b) that it can do so without prejudice to any party." *Id.* ¶ 1. The district court in *Fahrbach* was concerned that the jury would "find it confusing to be asked to allocate liability among tortfeasors when, without explanation, some of the tortfeasors are not present in court" because they had already settled with the plaintiffs prior to trial. *Id.* ¶ 3. In an attempt to avoid such confusion, the district court informed the jury prior to voir dire that the plaintiffs had sued three other parties who had settled and would not be participating in the trial, but that "you will hear evidence concerning their conduct and you will have an opportunity, if selected as a juror, to assess fault concerning some or all of those parties." *Id.* The plaintiffs argued this was error, *id.* ¶ 1, but the Supreme Court concluded that district courts are not precluded by Rule 11-408 "from advising the jury, where appropriate, regarding a settlement that has eliminated one or more parties." *Id.* ¶ 12. *Fahrbach* concluded that the district court's decision to inform the jury of the other defendants and settlements was a "proper[] attempt[] to eliminate what [the district court] reasonably perceived as unnecessary [juror] confusion." *See id.* ¶¶ 3, 21.

{8}     On appeal, Plaintiffs argue that "it was an abuse of discretion for the trial court to maintain the names of the dismissed parties in the caption and then give the

*Fahrbach* instruction to resolve any confusion about why their names were in the case caption."[3] The district court's decision to interlineate the case caption is inherently discretionary, and we review such a decision for an abuse of discretion. *See State v. Ferry*, 2018-NMSC-004, ¶ 2, 409 P.3d 918 ("Discretion is the authority of a district court judge to select among multiple correct outcomes."); *Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 823 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion."). We likewise review the district court's decision to instruct the jury consistently with *Fahrbach* for an abuse of discretion. *See* 1996-NMSC-063, ¶¶ 1, 21. Plaintiffs bear the burden of establishing that the district court abused its discretion. *See Sundance Mech. & Util. Corp. v. Atlas*, 1990-NMSC-031, ¶ 30, 109 N.M. 683, 789 P.2d 1250 ("The burden is upon the appellant to show that the trial court abused its discretion, and this burden is a heavy one in view of the requirement that there be a patent showing of abuse of discretion or manifest error in the trial court's exercise of that discretion." (citations omitted)).

{9}     Plaintiffs assert the confusion necessitating the *Fahrbach* instruction was "created" by the district court's "inclusion of the names of the dismissed parties in

---

[3]Defendants contend that Plaintiffs failed to preserve their arguments relating to the *Fahrbach* instruction. Because we conclude that Plaintiffs have not established error, we simply assume, without deciding, that they properly preserved this issue for appellate review.

the caption," and this confusion "would have been avoided by ministerially striking the names of the parties dismissed before trial." We are not persuaded. Contrary to Plaintiffs' assertion, any jury confusion relating to the dismissed defendants would not have been eliminated by striking their names from the caption. Plaintiffs ignore the fact that, consistent with the pretrial order, Defendants pursued a comparative fault defense against Drs. Valdez and McKenzie, two of the dismissed defendants, at trial,[4] and that extensive testimony was elicited about the actions of the treatment team, including Drs. Valdez and McKenzie. Thus, regardless of how the district court ruled on Plaintiffs' motion to interlineate, the fact of the dismissed defendants' existence and their conduct would have become known to the jury, raising questions and potential confusion for the jury about those defendants. *See Fahrbach*, 1996-NMSC-063, ¶¶ 3, 16 (considering, under similar circumstances, the district court's observation that "jurors find it confusing to be asked to allocate liability among tortfeasors when, without explanation, some of the tortfeasors are not present in court"). Given this, Plaintiffs have not advanced a viable argument why the district court's denial of the motion to interlineate was an abuse of discretion. *See Ferry*, 2018-NMSC-004, ¶ 2; *Talley*, 1993-NMCA-003, ¶ 12.

---

[4]Although Plaintiffs separately challenge the comparative fault instructions for lack of sufficient evidence, they do not contend on appeal that Defendants should have been barred at the outset of trial from asserting a comparative fault defense.

**{10}** Recognizing the possibility that the jury would be confused by the dismissed defendants, the district court determined that giving a *Fahrbach* instruction was appropriate. Plaintiffs fail to advance any persuasive argument why this decision prejudiced them or was otherwise erroneous. *See Fahrbach*, 1996-NMSC-063, ¶ 1 (holding that a district court "may inform the jury of the fact of settlement if the court has reason to believe (a) that it should do so in order to assist the jurors in understanding their responsibilities, and (b) that it can do so without prejudice to any party"). Plaintiffs contend that the *Fahrbach* instruction "gave the jury the impression Plaintiffs had already recovered for Mr. Thompson's death, the settled defendants had greater responsibility than Defendants for the death, that there was something behind Defendants' affirmative defenses of comparative fault, and that Plaintiffs were litigious and not trustworthy." The Supreme Court in *Fahrbach* disregarded similar arguments, even though the jury in that case was informed that the plaintiffs *settled* with absent defendants. *See id.* ¶ 3, 10. In this case, the jury was merely informed that Plaintiffs "resolved" their claims against the absent defendants and were specifically instructed, consistent with *Fahrbach*, *see id.* ¶ 17, "not to speculate upon the reason for, or content of, such resolution." Plaintiffs assume, contrary to case law, that the jury disregarded the instruction not to speculate. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 26, 146 N.M. 698, 213 P.3d 1127 ("We presume that the jurors followed the instructions given by the court.").

Further, Plaintiffs themselves speculate about the effect of the *Fahrbach* instruction on the jury in this case. This is insufficient to satisfy Plaintiffs' burden on appeal. *See Fahrbach*, 1996-NMSC-063, ¶ 32 (concluding that speculation that "the improper charge to the jury influenced the outcome of the case" was insufficient to establish reversible error (internal quotation marks omitted)); *Nat'l Educ. Ass'n of N.M. v. Santa Fe Pub. Schs.*, 2016-NMCA-009, ¶ 15, 365 P.3d 1 ("General assertions of prejudice are insufficient to demonstrate prejudice."). Plaintiffs otherwise argue that the *Fahrbach* instruction should not have been given in favor of simply striking the dismissed defendants' names from the caption. Having already determined this would not have eliminated the jury confusion, we have no basis to conclude that the district court abused its discretion in giving the *Fahrbach* instruction. *See Ferry*, 2018-NMSC-004, ¶ 2; *Talley*, 1993-NMCA-003, ¶ 12.

## II.     The Comparative Fault Instructions

{11}    Plaintiffs' principal argument on appeal is that the district court erred by instructing the jury on the comparative negligence of Drs. Valdez, McKenzie, and Stryker. Plaintiffs contend this was erroneous because (1) Defendants did not present sufficient evidence that Drs. Valdez, McKenzie, and Stryker breached the standard of care; and (2) Defendants contravened the pretrial order by relying on one of Plaintiffs' testifying experts as proof of Drs. Valdez, McKenzie, and Stryker's negligence, instead of the experts listed in the pretrial order, and by failing to

"provide any notice of Defendants' assertion of the defense of comparative liability as against [Dr.] Stryker." Defendants argue that Plaintiffs failed to preserve their challenges to the comparative fault instructions; regardless, the instructions were proper; and even if the instructions were erroneous, they were harmless and accordingly do not merit reversal. Because we agree with Defendants that any error in instructing the jury on comparative fault did not prejudice Plaintiffs and that prejudice is not presumed under the circumstances of this case, we simply assume, without deciding, that there was error and limit our analysis to an examination of harmless error.[5]

{12}    Generally speaking, the party complaining about instructional error on appeal has the burden of showing that the error was prejudicial—i.e., that the erroneous instruction influenced the jury's verdict. *See Kennedy v. Dexter Consol. Schs.*, 2000-

---

[5]Plaintiffs did not preserve their second argument that instructing the jury on comparative fault contravened the pretrial order. In support of preservation, Plaintiffs cite their motions for a directed verdict, reconsideration, and a new trial. Plaintiffs' motion for a directed verdict and subsequent motion for reconsideration, however, were premised on a lack of sufficient evidence to instruct the jury on comparative fault, not on a contravention of the pretrial order. Given this, Plaintiffs' motion for a new trial, which raised the arguments relating to the pretrial order for the first time, was insufficient to preserve these issues. *See Kilgore*, 2009-NMCA-078, ¶ 50 ("Generally, a motion for a new trial cannot be used to preserve issues not otherwise raised during the proceedings."); *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("Generally, a motion for a new trial cannot be used to preserve issues not otherwise raised during the proceedings."). We accordingly limit our consideration of whether there was harmless error to Plaintiff's first argument that insufficient evidence existed to instruct the jury on comparative fault.

NMSC-025, ¶¶ 26-27, 129 N.M. 436, 10 P.3d 115 (providing that "[a]n error is harmless unless the complaining party can show that it created prejudice," and that a judgment will not be set aside "based on mere speculation that an erroneous jury instruction influenced the outcome of the case"); *Vigil v. Miners Colfax Med. Ctr.*, 1994-NMCA-054, ¶ 9, 117 N.M. 665, 875 P.2d 1096 ("On appeal, it is the appellant's burden to show that the instruction given was erroneous and prejudicial.").

{13}     In this case, the jury found that Defendants were not negligent and, as a result, never reached the issue of the comparative fault of Drs. Valdez, McKenzie, and Stryker. The first question on the special verdict form asked the jury whether it found "either or both defendant(s) negligent" and prompted the jury to answer with either a "Yes" or "No." The jury answered "No." Based on this response, the special verdict form instructed the jury not to answer the remaining questions on the form and instead "have the foreperson sign this form and return it to the [b]ailiff." The question allocating fault—the last question on the special verdict form—was not answered by the jury, presumably because the jury "understood and complied with the court's instructions." *See Britton v. Boulden*, 1975-NMSC-029, ¶ 6, 87 N.M. 474, 535 P.2d 1325; *see also Kilgore*, 2009-NMCA-078, ¶ 26.

{14}     Under such circumstances—where the jury resolved the question of liability in the defendant's favor and consequently did not decide the question of allocation

of fault—our case law is clear that any error in instructing the jury on comparative fault is harmless. *See Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, ¶¶ 31 n.2, 41, 131 N.M. 317, 35 P.3d 972 (concluding that the district court's comparative fault instruction, "even if erroneous, would constitute harmless error" because the jury "found by special verdict that [the d]efendants were not negligent" and thus "did not reach the issue of apportionment of fault"); *Norwest Bank N.M., N.A. v. Chrysler Corp.*, 1999-NMCA-070, ¶¶ 6, 13-15, 127 N.M. 397, 981 P.2d 1215 (holding that any error in a special verdict form's comparative fault allocation instruction was harmless because the jury determined, prior to allocating fault, that the defendants' actions were not a proximate cause of the plaintiffs' injuries); *see also Fahrbach*, 1996-NMSC-063, ¶ 33 (concluding that "because the jury found that [the defendant] was not negligent, the [comparative fault] instructions . . . were harmless"); *Ramos v. Rodriguez*, 1994-NMCA-110, ¶¶ 15-16, 118 N.M. 534, 882 P.2d 1047 (citing approvingly "[t]he general rule applied by courts in other jurisdictions" that a jury's "finding that there was no proximate cause between the negligence of a defendant and the injuries suffered by a plaintiff[] renders any additional jury findings concerning the allocation of the percentage of fault to be mere surplusage"). Under the foregoing authority, any error in instructing the jury on comparative negligence was harmless because the jury resolved the question of liability in Defendants' favor, and, as a result, comparative fault was not at issue.

{15} Plaintiffs attempt to avoid this result by arguing that a different line of case law, in which prejudice is presumed when a jury instruction is not supported by sufficient evidence, applies. Plaintiffs' premise is that the *Lewis*/*Norwest* line of cases did not involve instructions unsupported by evidence and that when sufficient evidence to support a jury instruction is absent, a presumption of prejudice arises. Contrary to Plaintiffs' suggestion, however, a presumption of prejudice does not automatically arise, without further inquiry, in every case in which a jury instruction lacks sufficient evidentiary support. *See First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶ 14, 112 N.M. 317, 815 P.2d 613 (questioning whether the plaintiff was prejudiced by the submission to the jury of a duress claim that was not supported by substantial evidence, and stating that the Court was "inclined to think the erroneous submission of the duress claim to the jury does not present a case of reversible error," despite the rule of law that "when a party has submitted to the jury instructions providing alternative bases for relief, it is reversible error to submit any one alternative for which there is no substantial evidence" (alteration, internal quotation marks, and citation omitted)); *cf. Kennedy*, 2000-NMSC-025, ¶ 29 (acknowledging that dicta in *Gerety v. Demers*, 1974-NMSC-010, 86 N.M. 141, 520 P.2d 869, has been interpreted to support, in some situations, "assum[ing] prejudice where a jury instruction states a proposition of law not supported by evidence," but declining "[t]o expand *Gerety* to apply to technically erroneous jury instructions"

because this "would create a virtual per se rule of reversible error for any and all erroneous jury instructions and would threaten to remove jury instructions from the ambit of the doctrine of harmless error"); *Britton*, 1975-NMSC-029, ¶ 7 (acknowledging the holding in a prior case "that the failure of a trial court to instruct upon all correct legal theories presented and supported by substantial evidence constitutes reversible error," but limiting the reach of this holding because the prior case was "concerned with legal theories relative to the question of liability" and clarifying that "[i]t was not suggested that error in instructions on the question of damages, which is never reached by the trier of the facts, constitutes reversible error").

{16} An examination of *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001-NMCA-045, 130 N.M. 532, 27 P.3d 1019, on which Plaintiffs principally rely, is instructive. Although the Court in *Chamberland* presumed prejudice because "the [district] court erred in giving an instruction unsupported by the evidence," *id.* ¶ 26, the breadth of this holding is limited when the circumstances of *Chamberland* are considered. *Chamberland* involved the situation where the jury was instructed on independent intervening cause, and the jury returned a verdict for the defendants, finding on the special verdict form that the defendants' negligence was not the proximate cause of the plaintiff's injuries. *See id.* ¶¶ 1, 9-10, 17-19, 26. At the time, "proximate cause" was defined in the uniform jury instructions as "that which in a

natural and continuous sequence *unbroken by an independent intervening cause* produces the injury, and without which the injury would not have occurred." UJI 13-305 NMRA (1987) (emphasis added) (brackets omitted); *see also Chamberland*, 2001-NMCA-045, ¶ 23 (discussing UJI 13-305 (1987)). Thus, unlike here, the jury's verdict in *Chamberland*, which rested on causation grounds, necessarily involved the jury's consideration of the erroneous independent intervening cause instruction. *See* 2001-NMCA-045, ¶¶ 9-10, 17-19, 23. Given this, it was impossible to tell in *Chamberland* whether the jury's verdict was based on the improper instruction, making presumptive prejudice appropriate. *See Bachicha v. Lewis*, 1987-NMCA-053, ¶ 16, 105 N.M. 726, 737 P.2d 85 ("[W]here we cannot tell whether the jury based its verdict upon an improperly submitted issue, the proper procedure is to reverse and remand for a new trial on all issues."); *Garcia v. S. Pac. Co.*, 1968-NMSC-085, ¶¶ 8-9, 79 N.M. 269, 442 P.2d 581 (providing that instructional error was "prejudicial" where "[t]here is no way to tell what proportion, if any, of the verdict was a result of this error"); *First Nat'l Bank in Albuquerque*, 1991-NMSC-065, ¶ 14 (explaining that reversible error occurs when "an appellate court has no way of knowing whether the jury relied upon the invalid basis in making its decision"). *Chamberland* is in contrast with *Zia Trust, Inc. v. Aragon*, 2011-NMCA-076, ¶ 28, 150 N.M. 354, 258 P.3d 1146, which likewise involved an erroneous intervening cause instruction. In *Zia Trust*, however, "[t]he jury returned the special

verdict form . . . , stating that [the d]efendant was not negligent." *Id.* Because the jury never reached causation, "the district court's instruction on independent intervening cause was not an issue and therefore the instruction, even if improper, was not prejudicial and therefore constituted harmless error." *Id.*; *see also Kennedy*, 2000-NMSC-025, ¶ 28 (concluding that an instructional error was harmless because, based on the jury's verdict, it was clear that "[t]he error did not affect the jury").

{17}   Similar to *Zia Trust, Inc.*, because the jury in this case never allocated fault, the comparative negligence instructions were not an issue. *See* 2011-NMCA-076, ¶ 28. Given this, and because Plaintiffs fail to cite authority where prejudice was presumed under such circumstances, we are not persuaded by Plaintiffs' argument that a presumption of prejudice extends to the circumstances of this case. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. . . . Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Nor have Plaintiffs otherwise established that instructing the jury on comparative fault was prejudicial. *See Kennedy*, 2000-NMSC-025, ¶¶ 26-27; *Vigil*, 1994-NMCA-054, ¶ 9. In support of their claim that they were prejudiced, Plaintiffs principally rely on a note sent by the jury during deliberations asking whether it was to rule "on a percentage for the other doctors, despite hearing nothing about or from

them in the trial."[6] Before the judge could respond, however, the jury communicated that they did not "need an answer to this question because they reached a verdict." From the jury question, Plaintiffs contend, "The jury may well have started to conclude Defendants were liable and then shrunk away from the whole exercise because they did not have the information to evaluate whether the non-parties were negligent, and how to allocate fault among . . . them." It seems just as plausible that the jury question came about because the jury found no defendant negligent and wondered if they were supposed to fill out the allocation of fault portion of the special verdict form before realizing the jury instructions answered this inquiry for them.

{18}    Plaintiffs' speculation about the jury's decision-making process is plainly insufficient to establish prejudice from the comparative fault instructions. *See Fahrbach*, 1996-NMSC-063, ¶ 32 (concluding that speculation that "the improper charge to the jury influenced the outcome of the case" was insufficient to establish

---

[6]Plaintiffs also point to the combined effect of the caption with the absent defendants, the *Fahrbach* instruction, and Defendant Mumford's testimony, which we address next. Without explicitly saying so, Plaintiffs invoke the cumulative error doctrine. To the extent this is their argument, we conclude they have failed to demonstrate cumulative error "[g]iven our resolution of the [other] issues" they raise on appeal. *See Richardson v. Rutherford*, 1990-NMSC-015, ¶ 17, 109 N.M. 495, 787 P.2d 414 (concluding that the appellant "failed to show the existence of cumulative error" where the Court held that other issues raised on appeal were either not error or were harmless error); *cf. State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (alteration, internal quotation marks, and citation omitted)).

reversible error (internal quotation marks omitted)); *cf. Bachicha*, 1987-NMCA-053, ¶ 15 (holding that "handwritten notations [by the jury] do not provide a basis for determining how the jury reached a verdict for [the] defendant"). Furthermore, Plaintiffs' argument requires us—based on a note the jury quickly disclaimed—to disregard the well-established presumption that jurors follow jury instructions. *See Britton*, 1975-NMSC-029, ¶ 6; *Kilgore*, 2009-NMCA-078, ¶ 26. The instructions and the special verdict form directed the jury that Plaintiffs had to prove all of the elements of negligence, that Defendants denied that they were negligent, that each defendant should be considered separately, and that comparative fault should not be considered unless Defendants were found to be negligent. We decline to assume that the jury did otherwise.

{19}     In sum, the jury never reached the issue of comparative fault, prejudice is not presumed under the circumstances of this case, and Plaintiffs have not otherwise established prejudice from the comparative negligence instructions. We therefore conclude that any error in instructing the jury on comparative fault was harmless.

**III.    Defendant Mumford's Testimony**

{20}     Lastly, Plaintiffs argue that the district court improperly admitted certain expert testimony. Specifically, Plaintiffs argue Defendant Mumford's testimony about "[w]hether a colon looks normal or abnormal in size," "the difference between an oblique and a transverse measurement," and whether a demonstrative video was

accurate was improperly admitted as lay testimony under Rule 11-701 when in fact it was expert testimony governed by Rule 11-702. In light of this error, Plaintiffs contend that allowing expert testimony from one of Defendant Mumford's expert witnesses was cumulative of Defendant Mumford's expert testimony, contrary to Rule 11-403. Defendants argue that Plaintiffs failed to preserve these arguments and that the admission of the challenged testimony was otherwise proper. Because Plaintiffs have failed to meet their burden of demonstrating they were prejudiced by the challenged testimony, we simply assume, without deciding, that Plaintiffs preserved their objections and there was error, and we limit our analysis accordingly.

{21} "The complaining party on appeal must show the erroneous admission of evidence was prejudicial in order to obtain a reversal." *Kilgore*, 2009-NMCA-078, ¶ 64 (alteration, omission, internal quotation marks, and citation omitted). "This burden includes having to show a high probability that the improper evidence may have influenced the factfinder." *Id.* (internal quotation marks and citation omitted). Plaintiffs do not present any explanation of how the testimony in question may have improperly affected the jury's verdict as to Defendants' negligence. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (providing that "[w]e will not review unclear arguments, or guess at what [a party's] arguments might be"). Instead, the extent of Plaintiffs' prejudice argument is that permitting Defendants to "augment their testimony by putting on duplicative experts

and providing [cumulative] Rule 11-702 evidence" "compounded" the prejudice from other alleged errors related to the comparative fault issue. This argument does not explain how testimony about Defendants meeting the standard of care, even if cumulative, is prejudicial in relation to the comparative fault of the dismissed and nonparty doctors and is otherwise insufficient to meet Plaintiffs' burden to demonstrate prejudice. *See Kilgore*, 2009-NMCA-078, ¶ 64; *see also Nat'l Educ. Ass'n of N.M.*, 2016-NMCA-009, ¶ 15 ("General assertions of prejudice are insufficient to demonstrate prejudice."). We therefore conclude that the challenged testimony does not warrant reversal.

**CONCLUSION**

{22}    For the forgoing reasons, we affirm.

{23}    **IT IS SO ORDERED.**


_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**


_____
**ZACHARY A. IVES, Judge**


_____
**KATHERINE A. WRAY, Judge**